SKEETER-JO STOUTE-FRANCOIS
3040 Bayview Court
Stone Mountain, GA 30087
New Jersey Bar No.: 00789-2000
Tel: (770) 896-7991
E-mail: attnfrancois@hotmail.com

## IN THE UNITD STATES
## COURT OF INTERNATIONAL TRADE

SKEETER-JO STOUTE-FRANCOIS,                    :

                  Plaintiff,     :

-vs-                                           :        No. _____

JANET YELLIN,                                  :        **Court No.: 24-cv-00046**
SECRETARY OF THE TREASURY,                     :
UNITED STATES DEPARTMENT OF THE TREASURY,      :
UNITED STATES OF AMERICA                       :

                Defendant.     :        Hon. Judge: TBD

_____ :

## COMPLAINT

NOW COMES the Plaintiff, Skeeter-Jo Stoute-Francois, and avers as follows in support of her appeal from the U.S. Department of the Treasury's denial of credits for questions on the October 21, 2021, Custom Brokers License Exam resulting in denial of a Customs Brokers License.

## I.    JURISDICTION AND STANDING

1.    This Court has jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. §1581(g)(1), which states in pertinent part:

SKEETER-JO STOUTE-FRANCOIS,
    Plaintiff,
-vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
    Defendant.

2

(g). The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review-

(1) any decision of the Secretary of the Treasury to deny a customs broker's license under section 641(b)(2)....

2.   Plaintiff Skeeter-Jo Stoute-Francois is adult individual, sui juris, residing at 3040 Bayview Court, Stone Mountain, GA 30087-4205 and has standing to maintain this action pursuant to 28 U.S.C. 2631(g)(1), which reads in pertinent part:

(g)(1) A civil action to review any decision of the Secretary of the Treasury to deny a customs broker's license under section 641(b)(2)...],..., may be commenced in the Court of International trade by the person whose license or permit was denied or revoked.

## II.      **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

3.   On October 21, 2021, Plaintiff took the Customs Broker License Exam.[1]

4.   On November 16, 2021, the Plaintiff was notified that she had obtained a score of 67.50% on the Exam, falling short of the required minimum passing score of 75%.[2]

5.   Subsequently, on December 28, 2021, the Plaintiff initiated her initial appeal to the Secretary of the Treasury, as affirmed by U.S. Customs and Border Protection, within the stipulated 60-day period as per 19 CFR §111.17(c).

6.   Despite the appeal, on March 16, 2022, the Secretary of the Treasury upheld the Customs Service's decision, maintaining the denial of additional credit to the exam score. It's noteworthy that, during this process, Question 66 was recognized as correct for all appeal cases. The final score remained at 68.75%, and the Plaintiff was notified that she had not met the required minimum passing score of 75%.[3]

7.   Undeterred, on May 14, 2022, the Plaintiff submitted a Re-Appeal (2nd Appeal) to the Secretary of the Treasury.

---

[1] Exhibit A- Page 1 of 5- Exam Notice
[2] Exhibit A- Pages 2 and 3 of 5 November 16, 2021- Exam Result
[3] Exhibit A- Page 4 of 5 -March 16, 2022- First Appeal Decision

SKEETER-JO STOUTE-FRANCOIS,
                              Plaintiff,
        -vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
                      Defendant.

8. The latest development occurred on January 5, 2024, when the Secretary of the Treasury made adjustments, crediting Questions 18, 68, and 73. Despite these adjustments, the Plaintiff's revised score stood at 73.75%, still falling short of the necessary minimum passing score of 75%.[4]

9. This chronology underscores the Plaintiff's persistent efforts and the successive outcomes of the appeals, ultimately highlighting the ongoing challenge to achieve the requisite passing score on the Customs Broker

## III.  **ALLEGATIONS OF FACT AND LAW**

10. With sincere regard, I recount the series of events surrounding my Customs Brokers License Exam taken on October 21, 2021, in Atlanta, GA.

11. On November 16, 2021, I learned that my exam score stood at 67.50%, falling short of the necessary minimum passing score of 75%. Seeking clarity, on December 12, 2021, I respectfully requested a copy of my score report.

12. Regrettably, my initial request did not yield the desired result. Despite a prompt response from U.S. Customs and Border Protection on December 13, 2021, stating that score reports had already been sent and advising me to check spam/junk folders, I did not receive the report.

13. Undeterred, on December 27, 2021, I made a second request, noting that although the score report was initially given at Pearson Vue (the exam site), it was damaged, and no separate email was received with the decision letter.[5]

14. Despite my persistence, on December 30, 2021, I received an email from U.S. Customs and Border Protection reiterating the information from their previous response, leaving me without a copy of the score report.

---

[4] Exhibit A- Page 5 of 5 January 5, 2024, Second Appeal Decision
[5] Exhibit B – Pages 1 through 7 of 7 -Correspondence with CBP

SKEETER-JO STOUTE-FRANCOIS,
                                    Plaintiff,
       -vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
                         Defendant.

4

15. In light of these challenges, on December 28, 2021, I filed my first appeal with the Secretary of the Treasury, as affirmed by U.S. Customs and Border Protection within the prescribed 60-day period per 19 CFR 111.17(c).

16. Subsequent communications inquiring about the status of the October 21, 2021, Customs Broker Exam Appeal were met with responses from U.S. Treasury on February 25, 2022, assuring that appeals were being worked on diligently and directing inquiries to a specific email.

17. Unfortunately, on March 16, 2022, the Secretary of the Treasury affirmed the Customs Service's denial of additional credit to my exam score. Although Question 66 was marked correct for all who appealed, my final score remained at 68.75%, still below the required minimum passing score of 75%.

18. Persisting in my pursuit, on May 14, 2022, I filed a Re-Appeal (2nd Appeal) to the Secretary of the Treasury.

19. The most recent development occurred on January 5, 2024, when the Secretary of the Treasury credited questions 18, 68, and 73. Despite these adjustments, my revised score stood at 73.75%, falling short of the requisite minimum passing score of 75%.

20. In reaffirming my argument, I now submit further clarification and arguments for questions 16, 20, 34, 44, 45, and 46, seeking a fair and thorough reconsideration of my Customs Broker Exam results.

## IV.   QUESTIONS AND ARGUMENTS

**Question 16 as posed on the exam.**

In cases where imported cargo is unloaded from a commercial vessel at a port within the definition of 19 CFR 24.24 Harbor maintenance fee, and admitted into a foreign trade zone, the applicant for admission who becomes liable for the fee must pay all fees for which he is liable on a _____ basis.

A. Yearly
B. Daily
C. Monthly
D. Quarterly- CBP's Answer
E. Weekly  -Appellant's Answer[6]

---

[6] The individual (Appellant) who appealed the CPB exam is now the Petitioner before the Court.

SKEETER-JO STOUTE-FRANCOIS,
            Plaintiff,
-vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
            Defendant.

I am writing to respectfully appeal the grading of Question 16 on the recent exam. After thorough consideration, I believe that the question lacks essential facts, leading to an inconclusive answer. My argument centers around the ambiguity of the provided information and the necessity for more specific details to arrive at a definitive response.

The question inquiries about the payment basis for harbor maintenance fees when imported cargo is unloaded from a commercial vessel at a port within the definition of 19 CFR 24.24 Harbor maintenance fee and is admitted into a foreign trade zone. The available options include yearly, daily, monthly, quarterly (CBP's answer), and weekly (Appellant's answer).

<u>Grounds for Appeal:</u>

<u>Lack of Essential Facts:</u>
The regulation in question, 19 CFR 24.24(7)(d)(4), introduces a "de minimis for quarterly payments," stating that a quarterly payment is not required if the total value of all shipments for which a fee was assessed for the quarter does not exceed $10,000. Unfortunately, the question does not provide information about the value of shipments, making it impossible to determine whether the de minimis threshold is met. This omission of essential facts renders the question unfair and incomplete.

<u>Unclear Special Rules:</u>
The ambiguity surrounding whether the rules are considered "special" or standard further complicates the issue. As the Quarterly basis is identified as CBP's answer, the lack of clarity on the nature of these rules raises concerns about the accuracy of the provided response.

<u>Analysis:</u>

The central argument lies in the absence of specific information regarding the total value of shipments, a crucial factor in determining the applicability of quarterly payments. The reference

SKEETER-JO STOUTE-FRANCOIS,
        Plaintiff,
    -vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
        Defendant.

6

to the de minimis threshold makes it evident that more details are needed for a comprehensive answer.

Sometimes you have to look at the dynamic nature of cargo operations, emphasizing that the unloading of imported cargo and its admission into a foreign trade zone involves continuous and dynamic processes. Weekly payments allow for more frequent adjustments to accommodate changes in cargo volume, types, and other operational variables.

Weekly payments ensure a more consistent and predictable inflow of funds, enabling the necessary maintenance activities to be carried out promptly and efficiently.

Weekly payment schedule helps mitigate financial risks associated with delayed or irregular payments. It ensures that the fees are collected more frequently, reducing the likelihood of accumulating outstanding balances and enhancing the financial stability of harbor maintenance operations.

Conclusion:

In light of the aforementioned reasons, I respectfully request full credit for Question 16. A more specific presentation of facts is essential to arrive at an accurate response, and the current formulation of the question hinders a fair evaluation. I appreciate your attention to this matter and am open to further discussion or clarification if necessary.

Thank you for your understanding and consideration.

**Question 20 as posed on the exam**

Which piece of information is NOT a requirement on a commercial invoice?
A. All rebates, drawbacks, and bounties, separately itemized, allowed upon the exportation of the merchandise
B. An itemized list by name and amount of packing, cases, containers, and inland freight to the port of exportation, if included in the invoice price, and so identified- CBP's answer
C. The kind of currency, whether gold, silver or paper
D. The port of entry to which the merchandise is destined
E. The name of a responsible employee of the exporter, who has knowledge, or who can readily obtain knowledge, of the transaction – Appellant's answer

SKEETER-JO STOUTE-FRANCOIS,
                Plaintiff,
    -vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
                Defendant.

7

I am writing to appeal the grading of Question 20 on the October 21, 2021, exam, where the question inquired about information not required on a commercial invoice. My response was E, and I strongly believe that my answer is correct based on the ambiguity present in the question and the nuanced interpretation of the provided information.

Grounds for Appeal:

Ambiguity in the Question:

The question presents ambiguity as it asks for information "NOT a requirement" on a commercial invoice. The CBP's answer key designates option B as the correct response. However, a closer look at the provided CBP website information reveals that all options, including option B, can be listed on the commercial invoice, although they may not be requirements. The ambiguity in the phrasing of the question raises concerns about the clarity of the correct response.

Rule:

The CPB website outlines the commercial invoice requirements for clearing or filing entry documents with U.S. Customs and Border Protection. While it lists essential information such as an adequate description of the merchandise, quantities, values, and appropriate tariff subheadings as required, it also indicates that the port director may waive these requirements if certain information is not available at the time of release of the merchandise.

Analysis:

The critical point of contention arises from the fact that something which can be waived, if not expressly stated, cannot be considered an absolute requirement. The information mentioned in option B, regarding an itemized list of packing, cases, containers, and inland freight to the port of exportation, is subject to waiver by the port director if not readily available. Therefore, it cannot be definitively categorized as a requirement, aligning with my chosen response.

SKEETER-JO STOUTE-FRANCOIS,
                    Plaintiff,
        -vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
                    Defendant.

8

Additionally, the specific citation in 19 CFR that supports the flexibility in the submission of entry documents and the discretion of the port director is found in Section 142.3. This section outlines the general requirements for entry.

19 CFR § 142.3 - General requirements for entry:

Here are key points from this regulation that support my argument:

Flexibility in Documentation:

The section allows for the submission of documentation other than the commercial invoice when necessary.

It provides flexibility in the acceptance of alternative documents or additional information.

Waiver Authority:

It mentions that the port director has the authority to waive requirements under certain circumstances.

The decision to waive is based on the satisfaction of the port director regarding the availability of information at the time of release.

Supplemental Information:

The regulation recognizes that certain information may not be available at the time of release.

Supplemental information, if not initially provided, can be included in the invoice or substitute document delivered at the time the entry summary documentation is filed.

Given these points,  the question is ambiguous, and your response (including the name of a responsible employee) aligns with the flexibility and waiver provisions outlined in 19 CFR § 142.3.

SKEETER-JO STOUTE-FRANCOIS,
            Plaintiff,
  -vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
            Defendant.

9

Conclusion:

Given the ambiguity in the question and the acknowledgment on the CPB website that certain information may be waived, I respectfully request full credit for Question 20. My interpretation aligns with the nuanced nature of the requirements outlined, and the information in option B should be considered as potentially waivable rather than a strict requirement. I appreciate your consideration of this appeal and am open to further discussion or clarification if necessary. Thank you for your time and attention.

**Question 34 as posed on the exam**

An article of base metal containing two or more base metals is classified by the metal that _____.
A. Is referenced last in the HTSUS
B. Imparts the essential character of the article – Appellant's Answer
C. Predominates by weight over each of the other metals- CBP's Answer
D. Has the highest value
E. Is essential to its actual use

Grounds for Appeal

I firmly believe that my choice aligns with the principles outlined in the General Rules of Interpretation (GRI) and warrants a thorough re-consideration.

Essential Character Precedes Weight:

The question seeks to determine the classification of an article of base metal containing two or more base metals. My selected answer, B, posits that the classification is determined by the metal that imparts the essential character to the article. This is based on the understanding that essential character takes precedence over considerations of weight, as established by the General Rules of Interpretation.

SKEETER-JO STOUTE-FRANCOIS,
          Plaintiff,
     -vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
          Defendant.

10

Rule and Analysis:

General Rules of Interpretation (GRI):

The interpretation of composite goods is governed by the General Rules of Interpretation. According to GRI 1, when the essential character of a composite good can be determined, the entire product is classified as if it consisted only of that material or component which imparts the essential character. This principle holds precedence over the consideration of weight, as stated in GRI 3(b).

Referring to the HTSUS order is a crucial aspect of classification. However, it is essential to recognize that the order of reference in the HTSUS is not the sole determinant. The appellant's answer aligns with the principle that the material imparting the essential character takes precedence over its order of reference.

The grounds for appeal rightly emphasize the order of application of General Rules of Interpretation, specifically highlighting that GRI 1, which considers the essential character, should be applied before GRI 3(b), which addresses the predominance by weight. This argument supports the appellant's choice.

Choosing the metal that imparts the essential character is not only consistent with the principles of classification but also aligns with practical considerations. The essential character is often a critical factor in determining the function, purpose, and use of the article, making it a logical basis for classification.

*Example Illustration:*

For clarity, consider the example of a fork made from a combination of aluminum and stainless steel. In such a case, the classification would be determined by the essential character, which is the fork itself, rather than being classified based on the individual base metals. No one says they are eating with an aluminum and stainless-steel object…you say you are eating with a fork; the essential article. This aligns with the logical choice of answer B.

SKEETER-JO STOUTE-FRANCOIS,
                Plaintiff,
  -vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
                Defendant.

11

Conclusion:

Request for Full Credit:

The appellant correctly points out that the essential character of the article is a fundamental criterion in classification. According to the General Rules of Interpretation (GRI), the determination of essential character precedes considerations of weight or predominance. Given the principles outlined in the General Rules of Interpretation and the precedence accorded to essential character over weight, I respectfully request full credit for my answer, B. The selection of the material imparting the essential character is a logical application of the GRI, and my response adheres to the principles governing the classification of composite goods.

I appreciate your time and consideration of this appeal. Your thorough review of the arguments presented would be highly valued.

**Question 44 as posed on the exam**

What is the CLASSIFICATION of an automatic baseball pitching machine that releases five time- delayed balls in succession? The pitching machine is constructed of bright colored plastic and operates using four D cell batteries, which power the launcher and audible sound that signals when the next ball is coming. The product also includes a hollow yellow plastic bat and five white hollow plastic balls. Additionally, beginners can convert the product into a miniature T-ball set. It is recommended for children aged 3 years and older.
A. 9503.00.0071
B. 9503.00.0073 - CBP's Answer
C. 9504.90.9080
D. 9506.69.2040 – Appellant's Answer
E. 9506.99.1500

I am writing to appeal the grading of Question 44, where my response was D. I strongly believe that my answer aligns with common sense, traditional Customs jurisprudence, and the principles outlined in General Rule of Interpretation 1 (GRI 1). I respectfully request a thorough reconsideration based on the following grounds.

Grounds for Appeal:

SKEETER-JO STOUTE-FRANCOIS,
            Plaintiff,
-vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
            Defendant.

12

Unfairness Due to Limited Access:

The question presents an inherent unfairness as I did not have access to ALL Customs Rulings during the exam. This ruling is not part of the <u>materials list</u> for the exam.[7] My answer is based on logical reasoning and an interpretation of the available information, as opposed to relying on specific Customs Rulings.

<u>Rule:</u>

General Rule of Interpretation 1 (GRI 1):

GRI 1 emphasizes that for legal purposes, classification shall be determined according to the terms of the headings and any relevant section or chapter notes. This rule guides my interpretation of the facts presented in the question.

<u>Analysis:</u>

Common and Popular Meaning:

Customs jurisprudence supports the idea that classification should be determined by ascertaining the common and popular meaning of a tariff term. The baseball pitching machine, constructed of bright colored plastic, designed for physical exercise, and clearly for sports, is not a toy according to this understanding.

Statistical Note 1 Irrelevance:

Statistical Note 1, which suggests that the youngest age for which the product is intended determines the classification, is deemed irrelevant in our case. The product is recommended for children aged 3 years and older, and it is not suitable to classify equipment launching baseballs at high speeds as a toy for children under 5.

---

[7] Exhibit C- U.S. Customs and Border Protection. "Customs Brokers License Examination Notice of Examination."https://www.cbp.gov/trade/programs-administration/customs-brokers/license-examination-notice-examination. Page 3 of 3

SKEETER-JO STOUTE-FRANCOIS,
                    Plaintiff,
-vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
                    Defendant.

13

Elimination of 9503 Headings:

The ruling and fact pattern make it evident that the baseball pitching machine and associated equipment cannot be classified as toys under heading 9503, as baseballs are not considered toys.

Conclusion:

Logical Choice of Answer D - 9506.69.2040:

Given the analysis, my choice of answer D, 9506.69.2040, aligns most closely with the common and popular meaning of the product described in the fact pattern. Baseballs are not toys, and the equipment is clearly designed for physical exercise and sports, making 9506 the most fitting classification.

I respectfully request full credit for my answer based on the principles of GRI 1 and the logical application of traditional Customs jurisprudence. I appreciate your time and consideration in reviewing this appeal.

**Question 45 as posed on the exam**

What is the CLASSIFICATION of a battery- powered, digital blood-pressure monitor? The machine is composed of a fabric sleeve, a microphone, an electrical cord connecting the sleeve to the control unit, and the control unit. The control unit is housed in a plastic case and consists of two buttons for the power and start functions, a switch for various settings, and a LCD screen that displays the measurements.  The machine operates by inflating the sleeve around the user's arm, at which point the microphone picks up the arterial pulsating sound and transforms it into an electrical signal, which in turn is converted into a blood pressure reading within the control unit for display.  In this respect, the machine operates in a manner similar to a sphygmomanometer but allows blood pressure readings to be taken directly by the user and without the use of a stethoscope.
A. 8518.10.8030
B. 8543.70.9960
C. 9018.19.9550 - CBP's Answer
D. 9018.90.5040- Appellant's Answer
E.  9031.80.8085

SKEETER-JO STOUTE-FRANCOIS,
            Plaintiff,
-vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
            Defendant.

14

In light of the Grounds for Appeal, which suggests that CBP's answer may be derived from a 1992 Customs Ruling[8] on a similar situation, and considering the Rule provided, your choice of answer D (9018.90.5040) becomes even more compelling.

Grounds for Appeal:

This is a fundamentally unfair question.  CBP's answer could be rooted in a Customs Ruling on this matter, which is not part of the materials list for the exam and examinees did not have access to during the exam. In the absence of specific information, my approach was to logically deduce the classification based on the provided details.

Application of GRI and HTSUS Classification:

The application of General Rules of Interpretation (GRI), emphasizing GRI's principle that the heading providing the most specific description should be preferred over a more general one. 9018.90.5040 specifically mentions "sphygmomanometer," aligning with the detailed functionality of the blood-pressure monitor.  The battery-powered, digital blood-pressure monitor described in the question exhibits distinctive features that align with the characteristics of medical instruments falling under the scope of HTSUS code 9018.90.5040. This classification encapsulates instruments and appliances for medical, surgical, or veterinary sciences, making it the most fitting designation for this innovative device.

The operational mechanism of this blood-pressure monitor mirrors that of a sphygmomanometer, functioning by inflating a fabric sleeve and capturing arterial pulsations. This functional similarity firmly places it within the realm of medical instruments specified in 9018.

---

[8] Exhibit D - Customs ruling: https://rulings.cbp.gov/ruling/952720
Pages 1-3 of 3

SKEETER-JO STOUTE-FRANCOIS,
                    Plaintiff,
    -vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
                    Defendant.

15

A key distinction lies in its user-friendly design, allowing individuals to take blood pressure readings without the need for a stethoscope. This adaptation to direct user operation reinforces its classification as a specialized medical instrument.

Analysis:

The meticulous breakdown of components, including the fabric sleeve, microphone, electrical cord, and control unit with buttons and LCD screen, highlights the intricate design of the device. Such complexity aligns with the detailed nature of medical instruments covered under 9018.

The incorporation of electrical signals and an LCD screen for displaying measurements underscores the device's technological sophistication. This aligns seamlessly with the classification of electrical machinery and equipment under the broad heading of 9018.
Code Specificity for Precision:

Opting for 9018.90.5040 offers a more specific and nuanced classification, ensuring accuracy and compliance with the Harmonized System. Specificity is pivotal in capturing the unique attributes of the blood-pressure monitor in question.

Considering industry standards and conformity, if applicable, reinforces the appropriateness of choosing 9018.90.5040. Aligning the device with established practices in the medical equipment sector strengthens the argument for this classification.

Conclusion:

The logical deduction that, given the primary purpose of the device is to measure blood pressure and the absence of a more specific classification like 9018.19.9530 (blood pressure machine), 9018.90.5040 (sphygmomanometer) becomes the most fitting choice. Reinforce that the device essentially functions as a sphygmomanometer.

Request for Full Credit:

SKEETER-JO STOUTE-FRANCOIS,
            Plaintiff,
-vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
            Defendant.

Respectfully assert that your choice of 9018.90.5040 should be granted full credit based on the Latin term "eo nomine," as the word "sphygmomanometer" is explicitly stated in the answer choice. This aligns with the principle of choosing the most specific heading.

By intertwining these elements, you present a strong case for Appellant's answer choice D, demonstrating not only logical reasoning but also a keen adherence to the rules of tariff classification. This approach aligns with the principles of fairness and precision in the classification process.

### Question 46 as posed on the exam.

What is the CLASSIFICATION and DUTY RATE of D-Aspartic acid (CAS #1783-96-6)? D- Aspartic acid is an amino acid used as a pharmaceutical intermediate. (Note:  Prefixes such as D, I, L, S, O, M, P, etc., refer to various isomeric differences in chemical products.)
A. 2922.49.4915, HTSUS, at a duty rate of 4.2%
B. 2922.49.4915K, HTSUS, at a duty rate of Free
C. 2922.49.4950, HTSUS, at a duty rate of 4.2%-CBP'S Answer
D. 2922.49.4950K, HTSUS, at a duty rate of Free - Appellant's Answer
E.  2922.49.8000, HTSUS, at a duty rate of 3.7%

Grounds for Appeal:

Lacking essential facts.  To strengthen the argument for answer choice D (2922.49.4950K) and provide a comprehensive analysis, let's delve into the key factors influencing the classification and duty rate of D-Aspartic acid (CAS #1783-96-6):

Classification Analysis:

Specific HTSUS Code:

Answer choice D (2922.49.4950K) directly aligns with the specified chemical compound, D-Aspartic acid. The inclusion of the K suffix indicates that it is a free-duty item, making it highly specific to the substance described.

Harmonized System Code Relevance:

SKEETER-JO STOUTE-FRANCOIS,
          Plaintiff,
    -vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
          Defendant.

17

2922.49.4950 is a harmonized system code tailored for amino acids and their derivatives. This specificity enhances the accuracy of the classification, as it precisely pertains to the chemical nature and use of D-Aspartic acid as a pharmaceutical intermediate.

Duty Rate Analysis:

K Suffix Significance:

The inclusion of the K suffix in answer choice D signifies a duty-free status. Given that D-Aspartic acid is used as a pharmaceutical intermediate, this aligns with the common practice of providing duty-free status for chemicals with pharmaceutical applications to promote healthcare and research.

Alternative Choices:

Contrastingly, answer choice C (2922.49.4950) from CBP suggests a duty rate of 4.2%. The discrepancy between answer choices D and C lies in the inclusion of the K suffix, designating duty-free status. The appellant's choice (D) appears more fitting for a substance utilized in pharmaceutical applications.

Argument for Answer Choice D:

Precision in Classification:

The appellant's answer demonstrates a keen understanding of the harmonized system and chemical classification. The inclusion of the K suffix not only refines the classification but also reflects the substance's duty-free status.

Common Practice for Pharmaceutical Intermediates:

The pharmaceutical industry commonly benefits from duty-free classifications for intermediates to encourage research and development. Answer choice D aligns with this common practice, making it a more reasonable choice for a pharmaceutical intermediate like D-Aspartic acid.

Accurate Representation of CAS #1783-96-6:

SKEETER-JO STOUTE-FRANCOIS,
                    Plaintiff,
    -vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
                    Defendant.

18

Answer choice D aptly captures the unique chemical identity of D-Aspartic acid, aligning with its CAS number (1783-96-6) and serving as a more accurate representation of the specified substance.

Conclusion:

In conclusion, answer choice D (2922.49.4950K) not only aligns precisely with the chemical characteristics of D-Aspartic acid but also reflects the duty-free status applicable to pharmaceutical intermediates. The appellant's choice exhibits a nuanced understanding of classification principles and common industry practices, making it the most compelling and accurate selection.

## V.    **PRAYER FOR RELIEF**

In a spirit of respect and earnestness, the Plaintiff kindly seeks due consideration and credit for questions 16, 20, 34, 44, 45 and 46 on the Customs Broker License Exam. Your thoughtful review and acknowledgment of the merit in this request would be deeply appreciated.

Respectfully Submitted,

*[signature]* 1/31/2024

Ms.  Skeeter-Jo Stoute-Francois

N.J. Bar # 007892000
3040 Bayview Court
Stone Mountain, GA 30087
770-896-7991
attnfrancois@hotmail.com

SKEETER-JO STOUTE-FRANCOIS,
            Plaintiff,
    -vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
            Defendant.

19

CERTIFICATE OF SERVICE

On January 31, 2024 I, Skeeter-Jo Stoute-Francois, deposited a copy of the attached Summons and Complaint and  attached pages and exhibits in United States Mail to the following parties:

Janet Yellin, Secretary of the Treasury

U.S. Department of the Treasury

1500 Pennsylvania Avenue, N.W.

Washington, DC 20220


Justin R. Miller

Attorney in Charge

International Trade Field Office

Commercial Litigation Branch

U.S. Department of Justice

26 Federal Plaza

New York, NY 10278


_____

(signature)
Skeeter-Jo Stoute-Francois
NJ Bar # 007892000
3040 Bayview Court
Stone Mountain, GA 30087
770-896-7991
attnfrancois@hotmail.com

*January 31st, 2024*
(date)

SKEETER-JO STOUTE-FRANCOIS,
      Plaintiff,
-vs-
JANET YELLIN,
SECRETARY OF THE TREASURY,
UNITED STATES DEPARTMENT OF THE TREASURY,
UNITED STATES OF AMERICA
      Defendant.

20

# EXHIBIT A

Authorization to Test

PearsonVUEConfirmation@pearson.com <PearsonVUEConfirmation@pearson.com>
Fri 9/24/2021 2:20 PM

To:attnfrancois@hotmail.com <attnfrancois@hotmail.com>



## U.S. Customs and Border Protection

**\*\*PLEASE DO NOT RESPOND TO THIS E-MAIL\*\***

**CUSTOMS BROKER LICENSE EXAM**

For Official Use Only

__Your Appointment Details:__

---

**REGISTRANT NAME:** Skeeter-Jo StouteFrancois

**Candidate ID:** CBLE00020210269

**Client Authorization ID:** OCT2021CBP0534

**Examination Title:** CBLE - Customs Broker License Examination

**Number of Attempts Authorized:** 1

**Authorized Dates:** 21 October 2021  - 21 October 2021

---

**Important test delivery information pertaining to COVID-19 (coronavirus):**

Please review the specific health conditions and testing requirements for your country on our Coronavirus Update page before your exam appointment. By scheduling your test appointment, you agree to comply with these requirements. You will be asked to acknowledge these conditions and requirements upon arrival at the test center. You are required to bring and wear a face mask while at the test center and while taking your exam. Candidates without a face mask will be denied testing services. You must briefly remove your mask during the check-in process. If you refuse to wear a facemask or if you are sick or you have been in contact with an ill person, do not go to the test center — please reschedule your exam online for a later date.

---

**INSTRUCTIONS FOR SCHEDULING YOUR EXAMINATION SITE**

You may schedule your examination site on the Pearson VUE Web Site www.pearsonvue.com/CBLE or by calling the Pearson VUE Contact Center.

You are encouraged to self-select your exam site soon as testing location assignment is first come, first serve until filled. Self-selection will begin on **9/28/2021 at 12:01 AM Central Time and ends on 10/1/2021 at 11:59 PM Central Time.** If you do not self-select, you will be assigned to a location based on your address zip code that may not be your first choice, particularly due to some sites being at full capacity.

1 0f 5



1300 Pennsylvania Avenue NW
Washington, DC 20229

U.S. Customs and
Border Protection

Nov 16, 2021

Skeeter-Jo StouteFrancois
3040 Bayview Ct
Stone Mountain, GA 30087-4205 US

Dear Skeeter-Jo StouteFrancois:

This letter is to advise you of the results of your Oct 21, 2021 Customs Broker License
Examination.

Your score is 67.50 percent. The minimum passing score is 75.00 percent.

You may submit a written appeal of your score to U.S. Customs and Border Protection. In
your appeal, you must submit a compelling argument in your own words why your answer is
better than the official answer, or why the appealed question has no possible correct answer.

Your appeal package must be structured as follows:

- A cover letter stating your exam payment receipt number (e.g.: 3001-401312345)
  name and address, date and location of the exam (e.g.: Dallas, Los Angeles), and
  a list of the specific question(s) you are appealing.

- A copy of this letter.

- A copy of your answer sheet.

- The questions that you are appealing.

For each question that is appealed, you must:

- Present each appealed question in its entirety. Follow each question with the
  argument that supports your appeal for that particular question.

2 of 5

- Each question appealed must be presented separately, i.e., you must begin each appealed question on its own piece of paper. Your argument may begin on the same page as the question appealed.
- Each page must contain your name, exam date and the question number appealed (e.g.: Q 24).

Your appeal must be postmarked no later than 60 days from notification date. Your appeal package will be denied if it is incomplete or untimely. You will not receive credit for a question if it:

- Does not provide a compelling argument.
- Argues for an answer you did not select on the answer sheet.

Please send your appeal package to:

>U.S. Customs and Border Protection
>Office of Trade
>Trade Policy and Programs
>1331 Pennsylvania Ave NW
>Washington, DC 20229-1142

You have the option to submit your appeal electronically to brokermanagement@cbp.dhs.gov with the subject line "Exam Appeal." If submitted electronically, your appeal package must be contained in one PDF document. Electronic appeal submissions must be received no later than 5:00 PM EST by the 60th day from notification date.

If you have any further questions, please contact the Broker Management Branch at CBP Headquarters at brokermanagement@cbp.dhs.gov.

Sincerely,

Sharolyn McCann
Director, Commercial Operations, Revenue and Entry Division
Trade Policy and Programs
Office of Trade
U.S. Customs and Border Protection

3 of 5



1300 Pennsylvania Avenue, NW
Washington, DC 20229



U.S. Customs and
Border Protection

March 16, 2022

Skeeter-Jo Stoute-Francois
3040 Bayview Ct
Stone Mountain, GA 30087-4205

Dear Skeeter-Jo Stoute-Francois:

U.S. Customs and Border Protection has reviewed the appeal of your results of the October 21, 2021 Customs Broker License Exam. You submitted an appeal of questions 16, 18, 20, 34, 44, 45, 46, 68, and 73. CBP has granted credit for question 66. Any credit granted on a question not included in your appeal is based on CBP's determination that credit was warranted for that question.

Based on this determination, and including credit for any questions you may not have appealed but for which you were granted credit, your final score is 68.75 percent. A minimum score of 75.00 percent is required to pass the Customs Broker License Exam.

You may request a further review of the decision regarding your appeal by submitting arguments to the Executive Assistant Commissioner, Office of Trade, within 60 days of the date of this letter. Only those exam questions originally submitted for appeal are eligible for further review.

Should you choose to request further review, please submit your appeal electronically to BrokerManagement@cbp.dhs.gov with the subject line "Exam Appeal." If submitted electronically, your appeal package must be contained in one PDF document. Electronic appeal submissions must be received no later than 11:59 PM Eastern Time on the 60th day from the date of this letter.

Alternatively, appeals may be submitted via mail to the address below and must be postmarked no later than 60 days from the date of this letter.

> U.S. Customs and Border Protection
> Executive Assistant Commissioner, Office of Trade
> 1331 Pennsylvania Ave NW
> Washington, DC 20229-1142
> Re: Customs Broker License Exam Appeals

If you have any questions regarding this notification, please do not hesitate to contact Broker Management Branch, at brokermanagement@cbp.dhs.gov with "First Appeal" in the subject line.

Sincerely

Gail G. Kan
Acting Executive Director, Trade Policy and Programs
U.S. Customs and Border Protection, Office of Trade

4 of 5



1300 Pennsylvania Avenue, NW
Washington, DC 20229

**U.S. Customs and Border Protection**

JAN 0 5 2024

SkeeterJo StouteFrancois
3040 Bayview Ct.
Stone Mountain, GA  30087-4205

Dear SkeeterJo StouteFrancois:

U.S. Customs and Border Protection (CBP) has reviewed your second appeal of questions 16, 18, 20, 34, 44, 45, 46, 68 and 73 on the October 2021 Customs Broker License Examination. Your final score is 73.75 percent. A score of 75 percent must be attained to pass.

CBP has granted credit for questions 18, 68, and 73. Your arguments for questions 16, 20, 34, 44, 45, and 46 have been reviewed. You did not receive credit for these questions. Analysis is attached.

If you have any questions regarding these results, please do not hesitate to email the Broker Management Branch at brokermanagement@cbp.dhs.gov with "October 2021 2nd Appeal" in the subject line.

You may appeal this decision by filing an action in the Court of International Trade pursuant to 19 U.S.C. § 1641(e)(1) and 19 C.F.R. § 111.17.

Sincerely,

AnnMarie R. Highsmith
Executive Assistant Commissioner
Office of Trade
U.S. Customs and Border Protection

Attachment

5 of 5

# EXHIBIT B

**RE: Appeal -Inquiry on Oct ☐☐ 1, 2021, Customs Broker Ex ☐☐**

BROKERMANAGEMENT <brokermanagement@cbp.dhs.gov>
Tue 3/1/2022 8:33 AM
To:Skeeter-Jo Francois <attnfrancois@hotmail.com>

Good afternoon,

We are working to get appeals completed as soon as possible. Moving forward please send all inquries about the Customs Broker License Exam (CBLE) to the BrokerManagement@cbp.dhs.gov inbox.

Thank you,

Hannah Arnold
International Trade Specialist
U.S. Customs and Border Protection (CBP)

**From:** Skeeter-Jo Francois <attnfrancois@hotmail.com>
**Sent:** Friday, February 25, 2022 1:24 PM
**To:** ARNOLD, HANNAH P <HANNAH.P.ARNOLD@cbp.dhs.gov>
**Subject:** Appeal -Inquiry on October 21, 2021, Customs Broker Exam

**CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you feel this is a suspicious-looking email, please report by using the Report Phish button option.

Good Day Hannah P Arnold,

I am inquiring about my appeal for October 21, 2021, exam.  The results letter was dated November 16, 2021, and the appeal packet mailed on December 28, 2021, which is within the 60 days of the decision notice required to file the appeal.

Today's date is February 25, 2022, and **59 days** has passed since its submission.

Hopefully, I passed, and the goal is to save my strength for upcoming medical procedures in lieu of studying for April 2022 exam.  Therefore,  it is crucial that I know my results sooner rather than later.

Below are some of the particulars to assist you to find my records.

Name:     Skeeter-Jo Stoute-Francois
Address:  3040 Bayview Court
              Stone Mountain, GA 30087

Phone Number: (770) 896-7991
Candidate I.D.  CBLE00020210269
Test Date:      October 21, 2021
Location:       Pearson Professional Center
                  2 Corporate Blvd, NE, Suite 150
                  Atlanta, GA 30329, United States
Port Affiliation:  Atlanta, GA

          Date of Submission: December 28, 2021

Respectfully submitted,

Skeeter-Jo Francois, Esq.
FRANCOIS LAW FIRM, LLC

1 of 7

The Immigration Law Firm
P.O. Box 2300
Decatur, GA 30031
770-896-7991

NOTICE:  THIS COMMUNICATION MAY CONTAIN PRIVILEGED OR OTHER CONFIDENTIAL INFORMATION.  IF YOU ARE NOT THE INTENDED RECIPIENT, OR BELIEVE THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE DO NOT PRINT, COPY RETRANSMIT, DISSEMINATE OR OTHERWISE USE THE INFORMATION.  ALSO, PLEASE INDICATE TO THE SENDER THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, AND DELETE THE COPY YOU RECEIVED.  THANK YOU.

2 of 7

## RE: Status Update on App⌒⌒October 21, 2021 Customs⌒⌒r Exam

**DELGADO, JEANNINE A <JEANNINE.A.DELGADO@CBP.DHS.GOV>**
Mon 2/28/2022 10:49 AM
To:BROKERMANAGEMENT <brokermanagement@cbp.dhs.gov>
Cc:Skeeter-Jo Francois <attnfrancois@hotmail.com>
Forwarding inquiry to the Broker Management inbox for reply.

*Regards,*



*Jeannine Delgado*
*International Trade Specialist*
*Broker Management Branch*
*Office of Trade*
*U.S. Customs and Border Protection*

**From:** Skeeter-Jo Francois <attnfrancois@hotmail.com>
**Sent:** Friday, February 25, 2022 10:19 AM
**To:** DELGADO, JEANNINE A <JEANNINE.A.DELGADO@CBP.DHS.GOV>
**Subject:** Status Update on Appeal for October 21, 2021 Customs Broker Exam

**CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you feel this is a suspicious-looking email, please report by using the Report Phish button option.

Good Day Jeannine Delgado,

Inquiring about my appeal for October 21, 2021, exam.  The results letter was dated November 16, 2021, and the appeal packet mailed on December 28, 2021, which is within the 60 days of the decision notice required to file the appeal.

Today's date is February 25, 2022, and **59 days** has passed since its submission.

Hopefully, I passed, and the goal is to save my strength for upcoming medical procedures in lieu of studying for April 2022 exam.  Therefore,  it is crucial that I know my results sooner rather than later.

Below are some of the particulars to assist you to find my records.

Name:    Skeeter-Jo Stoute-Francois
Address: 3040 Bayview Court
         Stone Mountain, GA 30087

Phone Number: (770) 896-7991
Candidate I.D.  CBLE00020210269
Test Date:      October 21, 2021
Location:       Pearson Professional Center
                2 Corporate Blvd, NE, Suite 150
                Atlanta, GA 30329, United States
Port Affiliation:  Atlanta, GA

        Date of Submission: December 28, 2021

Respectfully submitted,

Skeeter-Jo Francois, Esq.
FRANCOIS LAW FIRM, LLC

*3 of 7*

RE: Status Update on Appe⏜   October 21, 2021 Customs ⏜   Exam

## DELGADO, JEANNINE A <JEANNINE.A.DELGADO@CBP.DHS.GOV>

Mon 2/28/2022 10:49 AM

To:BROKERMANAGEMENT <brokermanagement@cbp.dhs.gov>
Cc:Skeeter-Jo Francois <attnfrancois@hotmail.com>

Forwarding inquiry to the Broker Management inbox for reply.

*Regards,*



*Jeannine Delgado*
*International Trade Specialist*
*Broker Management Branch*
*Office of Trade*
*U.S. Customs and Border Protection*

**From:** Skeeter-Jo Francois <attnfrancois@hotmail.com>
**Sent:** Friday, February 25, 2022 10:19 AM
**To:** DELGADO, JEANNINE A <JEANNINE.A.DELGADO@CBP.DHS.GOV>
**Subject:** Status Update on Appeal for October 21, 2021 Customs Broker Exam

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you feel this is a suspicious-looking email, please report by using the Report Phish button option.

Good Day Jeannine Delgado,

Inquiring about my appeal for October 21, 2021, exam.  The results letter was dated November 16, 2021, and the appeal packet mailed on December 28, 2021, which is within the 60 days of the decision notice required to file the appeal.

Today's date is February 25, 2022, and **59 days** has passed since its submission.

Hopefully, I passed, and the goal is to save my strength for upcoming medical procedures in lieu of studying for April 2022 exam.  Therefore,  it is crucial that I know my results sooner rather than later.

Below are some of the particulars to assist you to find my records.

Name:    Skeeter-Jo Stoute-Francois
Address:  3040 Bayview Court
          Stone Mountain, GA 30087

Phone Number: (770) 896-7991
Candidate I.D.  CBLE00020210269
Test Date:      October 21, 2021
Location:       Pearson Professional Center
                2 Corporate Blvd, NE, Suite 150
                Atlanta, GA 30329, United States
Port Affiliation:  Atlanta, GA

          Date of Submission: December 28, 2021

Respectfully submitted,

Skeeter-Jo Francois, Esq.
FRANCOIS LAW FIRM, LLC

4 of 7

The Immigration Law Firm
P.O. Box 2300
Decatur, GA 30031
770-896-7991

NOTICE:  THIS COMMUNICATION MAY CONTAIN PRIVILEGED OR OTHER CONFIDENTIAL
INFORMATION.  IF YOU ARE NOT THE INTENDED RECIPIENT, OR BELIEVE THAT YOU HAVE
RECEIVED THIS COMMUNICATION IN ERROR, PLEASE DO NOT PRINT, COPY RETRANSMIT,
DISSEMINATE OR OTHERWISE USE THE INFORMATION.  ALSO, PLEASE INDICATE TO THE
SENDER THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, AND DELETE THE
COPY YOU RECEIVED.  THANK YOU.

5 of 7



### RE: Score Report

**BROKERMANAGEMENT <brokermanagement@cbp.dhs.gov>**
Thu 12/30/2021 4:38 PM
**To:Skeeter-Jo Francois <attnfrancois@hotmail.com>**
Good afternoon,

To clarify, are you trying to get a copy of the *Answer Record – a document only displaying the answer letter you selected for each question*? This would have been given to on the day of the exam.

Or are you trying to get a copy of the *Score Notification Letter – this document would inform you of the percentage score you received on the exam in letter format*? That document would have been sent on November 16, 2021.

Thank you,

Hannah Arnold
International Trade Specialist
U.S. Customs and Border Protection (CBP)

**From:** Skeeter-Jo Francois <attnfrancois@hotmail.com>
**Sent:** Monday, December 27, 2021 8:50 AM
**To:** BROKERMANAGEMENT <brokermanagement@cbp.dhs.gov>
**Subject:** Re: Score Report

Good Day,

The score report was given at Pearson Vue site however it is damaged.  The report was not emailed separately when decision letter was received.  Thank you in advance for your help.

Skeeter-Jo Francois, Esq.
FRANCOIS LAW FIRM, LLC
The Immigration Law Firm
P.O. Box 2300
Decatur, GA 30031
770-896-7991

NOTICE:  THIS COMMUNICATION MAY CONTAIN PRIVILEGED OR OTHER CONFIDENTIAL INFORMATION.  IF YOU ARE NOT THE INTENDED RECIPIENT, OR BELIEVE THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE DO NOT PRINT, COPY RETRANSMIT, DISSEMINATE OR OTHERWISE USE THE INFORMATION.  ALSO, PLEASE INDICATE TO THE SENDER THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, AND DELETE THE COPY YOU RECEIVED.  THANK YOU.

**From:** BROKERMANAGEMENT <brokermanagement@cbp.dhs.gov>
**Sent:** Monday, December 13, 2021 9:34 AM
**To:** Skeeter-Jo Francois <attnfrancois@hotmail.com>; BROKERMANAGEMENT <brokermanagement@cbp.dhs.gov>
**Subject:** RE: Score Report

Good morning,

Score reports have already been sent. Please check your spam/junk folder, and search for the email using the send address of: donotreply_MCR@cbp.dhs.gov.

Thank you,

6 of 7

Hannah Arnold

International Trade Specialist
U.S. Customs and Border Protection (BP)

**From:** Skeeter-Jo Francois <attnfrancois@hotmail.com>
**Sent:** Sunday, December 12, 2021 5:21 AM
**To:** BROKERMANAGEMENT <brokermanagement@cbp.dhs.gov>
**Subject:** Score Report

**CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you feel this is a suspicious-looking email, please report by using the Report Phish button option.

Good Day,

I respectfully request a copy of my score report sent to me.  Thank you.

Candidate Name Stoute-Francois, Skeeter-Jo
Candidate I.D. CBLE00020210269
Registration I.D. 406808272
Date of Exam 10-21-2021

Skeeter-Jo Francois, Esq.
FRANCOIS LAW FIRM, LLC
The Immigration Law Firm
P.O. Box 2300
Decatur, GA 30031
770-896-7991

NOTICE:  THIS COMMUNICATION MAY CONTAIN PRIVILEGED OR OTHER CONFIDENTIAL INFORMATION.  IF YOU ARE NOT THE INTENDED RECIPIENT, OR BELIEVE THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE DO NOT PRINT, COPY RETRANSMIT, DISSEMINATE OR OTHERWISE USE THE INFORMATION.  ALSO, PLEASE INDICATE TO THE SENDER THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, AND DELETE THE COPY YOU RECEIVED.  THANK YOU.

7 of 7

# EXHIBIT C



**U.S. Customs and Border Protection**

## Customs Broker License Exam (CBLE)

## Announcements

The next CBLE will be administered on May 1, 2024. CBP will open registration on Tuesday, February 20, 2024, at 12:01 am (Eastern), and registration will close on Thursday, March 21, 2024 at 4:30 pm (Eastern). Please carefully note that registration ends at the **end of the business day**. We will not accept new registrations after 4:30 pm on March 21, 2024.

Please review the Reference Materials tab carefully as we have added Volume 3 of Title 19, Code of Federal Regulations (Part 200 - End) as a resource from which questions for the May 1, 2024 examination may be drawn.

CBP has contracted with PDRI to administer the May 1, 2024 exam. PDRI is utilizing PSI resources as part of administering the CBLE.

| Close all | Open all |

## CBLE Information

The CBLE is an electronically administered exam that may be taken in-person at a testing facility. The CBLE may also be offered remotely during some exam administrations.

| CBLE Candidate Timeline |

1. **Approx. 10 Weeks Before Exam**

   Registration opens within the eCBP Portal

2. **Approx. 6 Weeks Before Exam**

*1 of 3*

Registration closes in the eCBP Portal

3. **Approx. 4 Weeks Before Exam**

   Vendor sends invitation emails for candidate account creation

4. **Approx. 4 Weeks Before Exam**

   Scheduling for both in-person and remote exam appointments begins in the vendor's system

5. **Approx. 3 Weeks Before Exam**

   Self-scheduling for exam appointments ends

6. **Approx. 3 Weeks Before Exam**

   Vendor manually schedules any candidate who did not self-schedule

7. **Approx. 1 Week Before Exam**

   Each exam candidate will receive an admission notice email from the vendor with his/her/their exam location

8. **Exam Day**

   Take the exam at scheduled time via selected modality

Please add CBLE_Support@talogy.com; CBLE_Support@psionline.com; and cbpcustomsbrokerexam@pdri.com to your contacts to ensure CBLE communications go to your inbox and not junk or spam.

About the CBLE

The purpose of the CBLE is to "determine the individual's knowledge of Customs and related laws, regulations and procedures, bookkeeping, accounting, and all other appropriate matters, necessary to render valuable service to importers and exporters." (19 CFR 111.13(a)).

- The CBLE consists of 80 multiple-choice questions. A score of 75 percent is required to pass. The examination lasts 4.5 hours. Typical exam categories and subcategories include: Entry/Entry Summary, including partner government

2 of 3

- agencies, foreign trade zones and bonded warehouses, bonds, warehouse entries, intellectual property rights, marking and country of origin; Classification; Valuation, Appraisement, and Duty Assessment, including anti-dumping/countervailing duty, Enforce and Protect Act, trade agreements, and quota; Broker Compliance, including power of attorney, recordkeeping, and fines and penalties; Modernized Drawback; Practical Exercises; and other subjects pertinent to brokers' duties.
- Examinees should use the reference materials noted under the Reference Materials tabs. The use of any versions of the listed references other than those listed is at the examinee's own risk. Examinees will not be provided with a test booklet. The exam is electronically delivered.
- Examinees should note that there is a timer located at the top right of the page of the exam. At ten (10) minutes remaining in the exam, the timer will turn red. The timer can only be seen while the examinee is at the top of the page. Please be mindful of this.
- Examinees will receive an email on how to download their answer record on exam day. The examinee's answer record will be necessary should an examinee appeal the CBLE results.
- CBP will make all efforts to post the exam as soon as possible after exam delivery on the Past Customs Broker License Examinations Answer Keys webpage.
- Exam result letters will be emailed to all examinees. Please ensure that brokermanagement@cbp.dhs.gov is in your email contacts to avoid missing your exam results.

CBP invites the public to submit questions for possible use in future CBLEs. Visit the Guidelines for writing new questions for the CBLE webpage for formatting information. Please submit questions to brokermanagement@cbp.dhs.gov.

Reference Materials

While electronic versions of the reference materials will be available and accessible through the electronic exam platform, **CBP recommends that examinees bring and use their own paper reference materials as a backup. Use of any other versions of the reference materials than detailed below is at the examinee's own risk.**

The May 1, 2024 CBLE Reference Materials are:

- Harmonized Tariff Schedule of the United States (Basic Edition) (HTSUS) Harmonized Tariff Schedule 2023 HTS Basic (usitc.gov)
- Title 19, Code of Federal Regulations (2023 Annual Edition) (Parts 1 to End)(CFR 0-140)(CFR 141-199)(CFR 200-599) (Code of Federal Regulations (Annual Edition))
- ACE Entry Summary Instructions Version 2.4a ACE Entry Summary Instructions I U.S. Customs and Border Protection (cbp.gov)
- Right to Make Entry (RTME) Directive 3530-002A 3530-002A Right to Make Entry I U.S. Customs and Border Protection (cbp.gov)
- ACE Entry Summary Business Rules and Process Document (Trade-External) (ACE BRPD) (Version 11 – Chapter 1 through 24) March 2023 ACE Entry Summary Business Process I U.S. Customs and Border Protection (cbp.gov)

3 of 3

# EXHIBIT D

HQ 952720

December 2, 1992

CLA-2 CO:R:C:M 952720 RFA

CATEGORY: Classification

TARIFF NO.: 9018.90.50

District Director of Customs
555 Battery Street
P.O. Box 2450
San Francisco, CA 94126


RE: IA 56/92; Digital Blood Pressure Machines;
Sphygmomanometers; 9018.19.80; 9018.90.70; PC 874257,
Revoked; PC 864808, Revoked; HQ 082973, Revoked

Dear District Director:

This is in response to your memorandum of August 14, 1992
(CLA-2-90-:SF:T2:WP), requesting internal advice (IA 56/92) on
behalf of A&D Engineering, Inc.'s Medical Division, for the
proper classification of digital blood pressure machines under
the Harmonized Tariff Schedule of the United States (HTSUS). We
have been asked to review pre-classification rulings PC 874257
(June 2, 1992) and PC 864808 (August 9, 1991), as well as HQ
082973 (October 4, 1989), which relate to the classification of
digital blood pressure machines.

FACTS:

The merchandise in question are digital blood pressure
machines, A&D Engineering Inc.'s Medical Division model numbers
UA-731, UA-701, and UA-711. The machines which perform like
sphygmomanometers, are electronic blood pressure measuring
instruments which allow blood pressure readings to be taken
without the use of a stethoscope. The machines contain a
microphone which picks up the arterial pulsating sound and
transforms it into an electrical impulse that controls the
operation of the electronic devices in the manometer unit. All
three models submitted operate on batteries.

*1 of 3*

ISSUE:

Are the described devices sphygmomanometers or are they other electro-medical instruments and appliances under the HTSUS?

LAW AND ANALYSIS:

Classification of merchandise under the HTSUS is in accordance with the General Rules of Interpretation (GRI's), taken in order. GRI 1 provides that classification shall be determined according to the terms of the headings and any relative section or chapter notes, and if not, by the following GRI's, taken in order.

In HQ 082973, we stated that digital blood pressure machines are classifiable under subheading 9018.90.70, HTSUS, which provides for "[i]nstruments and appliances used in medical, surgical, dental or veterinary science. . .[o]ther instruments and appliances. . .[o]ther. . .electro-medical instruments and appliances. . . [o]ther."

In PC 874257 and PC 864808, you stated that digital blood pressure machines were held to be classifiable under subheading 9018.19.80, HTSUS, which provides for "[i]nstruments and appliances used in medical, surgical, dental or veterinary science. . ..[e]lectro-diagnostic apparatus. . .[o]ther. . . [o]ther."

Subheading 9018.90.50, HTSUS, describes "[i]nstruments and appliances used in medical. . .[o]ther instruments and appliances and parts. . .[s]phygmomanometers. . ." Stedman's Medical Dictionary (25th ed., Illustrated), at page 1448, defines sphygmomanometer as "an instrument for measuring arterial blood pressure consisting of an inflatable cuff, inflating bulb, and a gauge showing the blood pressure."

The subject digital blood pressure machines contain a microphone which picks up the arterial pulsating sound and transforms it into an electrical impulse that controls the operation of the mechanical devices in the manometer unit. Although this feature is not described in the above cited definition of the sphygmomanometer, it is our position that this factor should not preclude the articles from being classified as sphygmomanometers. It is a fundamental and longstanding tariff classification principle that an eo nomine designation of an article, absent legislative intent or other contrary limitations, includes all forms of an article.

The purpose of the device is to measure an individual's

blood pressure and it should be cla____ as a sphygmomanometer.
The proper classification of the devices are as sphygmomanometers
under subheading 9018.90.50, HTSUS.

HOLDING:

The digital blood pressure machines are classified as
sphygmomanometers in subheading, 9018.90.50, HTSUS. The column
1, general rate of duty is 3.4 percent ad valorem. This notice
to you should be considered a revocation of HQ 082973 (October 4,
1989), PC 874257 (June 2, 1992) and PC 864808 (August 9, 1991)
under section 177.9(d) of the Customs Regulations [19 CFR
177.9(d)].

Please furnish a copy of this ruling to the internal advise
applicant.

EFFECT ON OTHER RULINGS:

HQ 082973 (October 4, 1989), PC 874257 (June 2, 1992), and
PC 864808 (August 9, 1991) are revoked pursuant to section
177.9(d) of the Customs Regulations [19 CFR 177.9(d)].

Sincerely,


John Durant, Director
Commercial Rulings Division

3 8 3

Skeeter-Jo Francois
3040 Bayview Ct
Stone Mountain, GA 30087



PLACE THIS LABEL TO THE LEFT OF THE POSTAGE

**USPS CERTIFIED MAIL®**

9507 1065 9381 4031 2746 83



U.S. POSTAGE
$7.47

TO: Clerk of the Court
    Court of International Trade
    26 Federal Plaza
    New York, NY 10278