UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LISA W. WANG, JUDGE

| | | |
|---|---|---|
| SKEETER-JO STOUTE-FRANCOIS, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No. 24-00046 |
| | : | |
| v. | : | |
| | : | |
| JANET YELLEN, SECRETARY OF THE | : | |
| TREASURY, UNITED STATES | : | |
| STATES DEPARTMENT OF THE TREASURY, | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## <u>ORDER</u>

Upon consideration of plaintiff's motion for judgment on the record, defendants' response thereto, and other papers on file, and upon due deliberation; it is hereby

**ORDERED** that plaintiff's motion is denied; and it is further

**ORDERED** that U.S. Customs and Border Protection's denial of plaintiff's application for a customs broker's license is sustained; and it is further

**ORDERED** that judgment is entered for the defendants and the action is dismissed.


_____
                         JUDGE

Dated: _____
        New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. LISA W. WANG, JUDGE

| | | |
|---|---|---|
| SKEETER-JO STOUTE-FRANCOIS, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No. 24-00046 |
| | : | |
| v. | : | |
| | : | |
| JANET YELLEN, SECRETARY OF THE TREASURY, UNITED STATES DEPARTMENT OF THE TREASURY, UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE RECORD

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA McCARTHY
Director

JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

MARCELLA POWELL
Senior Trial Counsel

NICO GURIAN
Trial Attorney
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. (212) 264-9230 or 1873
Attorneys for Defendant

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 1

    A.  The Customs Broker License Examination ....................................................... 1

    B.  The Facts In This Case ........................................................................................ 3

STANDARD OF REVIEW ................................................................................................ 5

ARGUMENT ...................................................................................................................... 7

    CBP'S DECISION TO NOT AFFORD PLAINTIFF CREDIT FOR THE CONTESTED
    QUESTIONS WAS SUPPORTED BY SUBSTANTIAL EVIDENCE............................ 7

CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Chae v. Yellen*,
570 F. Supp. 3d 1343 (Ct. Int'l Trade 2022) ............................................................... 14

*Chae v. Yellen*,
2023 WL 3072385 (Fed. Cir. Apr. 25, 2023) ................................................................ 2

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938) ....................................................................................................... 5

*Depersia v. United States*,
637 F. Supp. 2d 1244 (2009) ..................................................................................... 8, 13

*Di Iorio v. United States*,
14 CIT 746 (1990) ................................................................................... 6, 9, 11, 14

*Diamond Sawblades Mfrs. Coal v. United States*,
37 CIT 1501 (2013) ...................................................................................................... 9

*Dunn-Heiser v. United States*,
374 F. Supp. 2d 1276 (Ct. Int'l Trade 2005) ...................................................... 2, 5, 6

*Fusco v. United States Treasury Dep't*,
695 F. Supp. 1189 (Ct. Int'l Trade 1988) ..................................................................... 5

*Harak v. United States*,
30 CIT 908 (2006) ......................................................................................................... 6

*Kennv v. Snow*,
401 F.3d 1359 (2005) ............................................................................................. 5, 9, 17

*Lemans Corp. v. United States*,
660 F.3d 1311 (Fed. Cir. 2011) .................................................................................. 16

*Mattel, Inc. v. United States*,
950 F. Supp. 353 (Ct. Int'l Trade 1996) ..................................................................... 17

*Minnetonka Brands, Inc. v. United States*,
24 CIT 645 (2000) ....................................................................................................... 16

*Orlando Food Corp. v. United States*,
140 F.3d 1437 (Fed. Cir. 1998) .............................................................................. 13, 16

*Otter Prods., LLC v. United States*,
834 F.3d 1369 (Fed. Cir. 2016) .................................................................................. 13

*Tarnove v. Bentsen*,

17 CIT 1324 (1993) .................................................................................................... 5

**Statutes**

5 U.S.C. § 706 ...................................................................................................... 5, 6

15 U.S.C. § 2052 ....................................................................................................... 18

19 U.S.C. § 1641 ........................................................................................... 2, 3, 4, 14

28 U.S.C. § 1581(g)(1) ............................................................................................... 3

28 U.S.C. § 2640 ....................................................................................................... 14

**Regulations**

19 C.F.R. § 24.24 .................................................................................................... 7, 8

19 C.F.R. § 111.11(a)(4) ............................................................................................. 2

19 C.F.R. § 111.13 ...................................................................................................... 2

19 C.F.R § 111.16 ....................................................................................................... 3

19 C.F.R. § 111.17 ...................................................................................................... 4

19 C.F.R. § 141.83 ..................................................................................................... 12

19 C.F.R. § 141.86 ................................................................................................ 10, 11

19 C.F.R. § 142.6 ................................................................................................. 11, 12

**Other Authorities**

HQ H010584 (Dec. 18, 2007) .................................................................................. 17

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LISA W. WANG, JUDGE

_____

SKEETER-JO STOUTE-FRANCOIS,        :
                                                       :
                                                       :
                   Plaintiff,         :             Court No. 24-00046
                                                       :
                 v.                    :
                                                       :
JANET YELLEN, SECRETARY OF THE    :
TREASURY, UNITED STATES           :
DEPARTMENT OF THE TREASURY,     :
UNITED STATES OF AMERICA        :
                                                       :
                 Defendants.      :

_____ :

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Defendants, Janet Yellen, Secretary of the Treasury, United States Department of the Treasury, United States of America (Government), pursuant to Rule 56.1 of the Rules of this Court, submit this memorandum in opposition to plaintiff's Motion for Judgment on the Record.

**INTRODUCTION**

Plaintiff Skeeter-Jo Stoute-Francois challenges U.S. Customs and Border Protection's (CBP or Customs) denial of credit for four questions on the October 2021 Customs Brokers License Examination. As a result of the denial of credit, plaintiff failed to attain a passing score on the examination, which resulted in CBP's denial of her application to obtain a broker's license.

**BACKGROUND**

A.  The Customs Broker License Examination

"Customs brokers help importers and exporters navigate the labyrinthine of federal laws governing the movement of merchandise into and out of the customs territory of the United

States." *Dunn-Heiser v. United States*, 374 F. Supp. 2d 1276, 1278 (Ct. Int'l Trade 2005). In order to become a customs broker, applicants must obtain a customs broker's license by successfully completing a written examination that is administered by Customs. 19 U.S.C. § 1641(b)(2)[1]; *see also* 19 U.S.C. § 1641(f) (authorizing the promulgation of regulations relating to customs brokers); 19 C.F.R. § 111.13 (setting forth regulations governing the written examination). The exam is designed "to determine the applicant's knowledge of customs and related laws, regulations and procedures," as well as "all other appropriate matters to render valuable service to importers and exporters." 19 U.S.C. § 1641(b)(2); 19 C.F.R. § 111.13(a).

The Customs Broker License Examination (CBLE) is administered annually in April and October, and applicants must receive a passing score of 75 percent or higher to obtain their license. 19 C.F.R. § 111.11(a)(4). As the U.S. Court of Appeals for the Federal Circuit has explained:

> The examination is initially scored by Customs. After this initial scoring, 19 C.F.R. § 111.13(f) and 19 U.S.C. § 1641(e) provide a multitiered system of administrative and judicial review. If the passing grade of 75% is not attained, the applicant may request an initial administrative review by the Broker Management Branch of CBP's Office of Trade. *See* 19 C.F.R. § 111.13(f). If the applicant's score remains below 75% after this initial review, the applicant may request a second round of administrative review by the "appropriate Executive Director" of CBP's Office of Trade. *Id.* If an applicant's score remains below 75% after exhausting these two levels of administrative review, the decision to deny a customs broker license may be judicially appealed to the CIT. *See* 19 U.S.C. § 1641(e)(1).

*Chae v. Yellen*, 2023 WL 3072385, at *1 (Fed. Cir. Apr. 25, 2023)

---

[1] 19 U.S.C. § 1641(b)(2) provides:

Before granting the license, [Customs] may require an applicant to show any facts deemed necessary to establish that the applicant is of good moral character and qualified to render valuable service to others in the conduct of customs business. In assessing the qualifications of an applicant, [Customs] may conduct an examination to determine the applicant's knowledge of customs and related laws, regulations and procedures, bookkeeping, accounting, and all other appropriate matters.

When applicants seek administrative review of their test results, Customs communicates the result of that review in the form of a letter.  If, after two administrative reviews, Customs determines that the applicant has still not achieved a passing grade of 75 percent, the letter sent by Customs' Executive Assistant Commissioner, Office of Trade, functions as a notice of denial of the application from which the applicant may appeal to this Court.  *See* 19 C.F.R § 111.16 (explaining that if the "appropriate Executive Director, Office of Trade, determines that the application for a license should be denied for any reason, notice of denial will be given by him or her to the applicant" and that the "notice of denial will state the reasons why the license was not issued"); 28 U.S.C. § 1581(g)(1) ("The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review – any decision of the Secretary of the Treasury to deny a customs broker's license under [19 U.S.C. § 1641(b)(2)].").

B.  The Facts In This Case

Plaintiff sat for the CBLE on October 21, 2021, at the Pearson Professional Center in Atlanta, Georgia.  Admin. Rec. (AR) at 82-108.  The exam consisted of 80 questions.  *Id.*  By letter dated November 16, 2021, Customs notified plaintiff that she had obtained a score of 67.50 percent on the exam.  *Id.* at 1-3.  Because 67.50 percent is less than the required 75 percent needed to pass the exam, the letter informed plaintiff that she had failed.  *Id.*  Plaintiff then sought administrative review from Customs' Broker Management Branch, arguing that she should have received credit for nine questions—questions number 16, 18, 20, 34, 44, 45, 46, 68, and 73—that Customs had determined she had gotten wrong.  *Id.* at 3-15.  By letter dated March 16, 2022, Customs informed plaintiff that it was not changing its determination as to the nine questions she had appealed.  *Id.* at 23.  However, the letter also informed plaintiff that, unrelated to her appeal, Customs was granting her credit for question number 66.  *Id.*  The letter therefore explained that plaintiff's adjusted score

was 68.75 percent, still below the required 75 percent to pass the test.  *Id.*

Plaintiff then sought a second round of review from Customs' Executive Assistant Commissioner, Office of Trade, again arguing that she should have received credit for questions number 16, 18, 20, 34, 44, 45, 46, 68, and 73.  *Id*. at 24-37.  By letter dated January 5, 2024, Executive Assistant Commissioner AnnMarie R. Highsmith informed plaintiff that Customs would give plaintiff credit for questions number 18, 68, and 73.  *Id.* at 60-69.  The letter also explained that Customs would not give plaintiff credit for the remaining questions she had appealed.  *Id.* at 61.  The letter then informed plaintiff that her "final score is 73.75"and that she could appeal Customs' decision "by filing an action in the Court of International Trade pursuant to 19 U.S.C. § 1641(e)(l) and 19 C.F.R. § 111.17."  *Id.*

Plaintiff then commenced this action.  Upon the filing of plaintiff's Complaint, Customs began assembling the administrative record for this action.  During its review of the documents, Customs discovered that the score of 73.75 percent that it reported in its January 5, 2024, letter to plaintiff was incorrect and the result of a clerical calculation error.  Specifically, each CBLE question is worth 1.25 points.  Customs initially credited plaintiff with 54 correct answers out of a total of 80 questions, for a score of 67.50 percent.  After plaintiff's first appeal for administrative review, Customs credited plaintiff with one additional question, bringing her total number of correct answers to 55 out of a total of 80 questions, for a score of 68.75 percent.  After plaintiff's second appeal for administrative review, Customs credited plaintiff with three additional questions, bringing her total number of correct answers to 58 out of a total of 80 questions, for a score of 72.50 percent.   Therefore, the January 5, 2024, letter from Ms. Highsmith to plaintiff should have informed plaintiff that her final score was 72.50 percent.  However, Customs incorrectly wrote "73.75" instead of "72.50" in the letter.

On May 8, 2024, this Court granted the Government's motion to remand the case to Customs to correct its letter and issue a revised letter to plaintiff. ECF No. 12. On May 22, 2024, Customs issued a revised letter to plaintiff, explaining that plaintiff's final score on the exam was 72.50 and that she did not pass the test. AR at 72-80. Through this action, plaintiff challenges CBP's refusal to afford credit for questions number 16, 20, 34, and 44. For the reasons stated below, the Court should sustain CBP's denial of plaintiff's application for a license, enter judgment for the Government, and dismiss this action.

## STANDARD OF REVIEW

The denial of a Customs broker's license can be overturned only if that decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706. The U.S. Court of Appeals for the Federal Circuit has observed that:

> Underpinning a decision to deny a license arising from an applicant's failure to pass the licensing examination are factual determinations grounded in examination administration issues - such as, in the present case, the allowance of credit for answers other than the official answer- which are subject to limited judicial review because the findings of the Secretary as to the facts, if supported by substantial evidence, shall be conclusive.'

*Kenny v. Snow*, 401 F.3d 1359, 1361 (2005) (citations and quotation marks omitted and alterations adopted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tarnove v. Bentsen*, 17 CIT 1324, 1324 (1993); *Fusco v. U.S. Treasury Dep't*, 695 F. Supp. 1189, 1193 (Ct. Int'l Trade 1988).

Moreover, the agency is "entitled to certain latitude in the design and scoring of customs broker license exams." *Dunn-Heiser*, 374 F. Supp. 2d at 1280 (citation omitted). "Judicial intrusion into . . . the formulation and grading of standardized examination questions" is properly

"limited in scope." *Id.* (citation omitted). While the Court reviews each exam question, "[p]arties should not conclude from the court's detailed examination of the test answers that the court is some kind of final reviewer of the [exam]." *Di Iorio v. United States,* 14 CIT 746, 752 (1990). On the contrary, instead of "substitute[ing] its own judgment on the merits of the Customs examination," the Court "will examine decisions made in connection therewith on reasonableness standard." *Id.* at 747; *see also Harak v. United States*, 30 CIT 908, 912 (2006).

## ARGUMENT

### CBP'S DECISION TO NOT AFFORD PLAINTIFF CREDIT FOR THE CONTESTED QUESTIONS WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Plaintiff contends that CBP's decision to deny her appeal of questions 16, 20, 34, and 44 was not supported by substantial evidence. Plaintiff is incorrect as to all four challenged questions, because the evidence in the administrative record establishes that CBP's decision to deny plaintiff's appeal of those questions was reasonable and amply supported.

The following is a discussion of the contested questions:

### Question No. 16

In cases where imported cargo is unloaded from a commercial vessel at a port within the definition of 19 CFR 24.24 Harbor maintenance fee, and admitted into a foreign trade zone, the applicant for admission who becomes liable for the fee must pay all fees for which he is liable on a _____ basis.

A.    Yearly

B.    Daily

C.    Monthly

**D.    Quarterly**

E.    Weekly

In scoring the exam, CBP designated the correct answer as (D), "Quarterly."  Plaintiff selected answer choice (E), "Weekly."  CBP's Regulations and Rulings (R&R) provided analysis in support of CBP's answer, (D), the substance of which was later provided to plaintiff along with the final notice of her license denial:

> The question presented is enumerated verbatim in 19 C.F.R. § 24.24(e)(2)(iii). As the rule states, if imported cargo is unloaded from a commercial vessel and admitted into a foreign trade zone, the fees must be paid on a quarterly basis per 19 C.F.R. § 24.24(e)(2)(iii). Stoute[-]Francois instead relies on 19 C.F.R. § 24.24(d)(4), which states that 'quarterly payment is not required if the total value of all shipments for which a fee was assessed for the quarter does not exceed $10,000.' As this is a special rule, it is implicated only if the relevant facts are present in the question, *i.e.*, if the value of the imported cargo exceeds $10,000 or if the total value of the shipments was assessed for the quarter. Otherwise, the default rule in 19 C.F.R. § 24.24(e)(2)(iii) applies. Additionally, 19 C.F.R. § 24.24(e)(2)(iii) omits the language 'subject to the exemptions and special rules of this section,' which means that cargo imported per 19 C.F.R. § 24.24(e)(2)(iii) is not subject to the special rule in 19 C.F.R. § 24.24(d)(4).

AR at 62.

CBP's choice of (D), "Quarterly," as the best answer is supported by substantial evidence.  In particular, as R&R explained, the wording of Question No. 16 tracks the regulatory language almost exactly and specifically references admission of cargo into "Foreign Trade Zones."  AR at 44; 19 C.F.R. § 24.24(e)(2)(iii) ("In cases where imported cargo is unloaded from a commercial vessel at a port within the definition of this section and admitted into a foreign trade zone, the applicant for admission . . . who becomes liable for the fee at the time of unloading pursuant to paragraph (e)(3)(i) of this section, must pay all fees for which he is liable on a *quarterly* basis in accordance with paragraph (f) of this section . . . .") (emphasis added).  R&R was likewise correct that, unlike section 24.24(e)(2)(i), (e)(2)(iii) does not state that it is "[s]ubject to the exemptions and special rules" of the section.  Additionally, subsection (f) of the

regulation, "Quarterly payments," provides additional support that the question references the default rule outlined in subsection (e). Moreover, the context of the other answer choices, all of which describe frequency of payments, does not suggest that the *de minimis* rule in subsection (d), or any exemption, should be taken into account when selecting an answer. *See id.* § 24.24(d)(4) ("Quarterly payment is not required if the total value of all shipments for which a fee was assessed for the quarter does not exceed $10,000."). There is no answer choice option providing that the harbor maintenance fee is *not* required.

Plaintiff's arguments that CBP's decision is not supported by substantial evidence "because the question omitted sufficient information that would have permitted Plaintiff to make an informed choice," Pl.'s Br. at 11-13, misconstrues the relevant standard of review in CBLE review cases. Plaintiff, quoting caselaw unrelated to the CBLE context, argues that "[t]he absence of evidence is not evidence of absence," Pl.'s Br. at 12 (quoting *Diamond Sawblades Mfrs. Coal. v. United States*, 37 CIT, 1501, 1511(2013)), and insists that plaintiff could not "choose an answer" based on the information in the question. *Id.* at 13. But, as this Court has noted in a previous analysis of competing arguments regarding a "best" possible answer choice on the CBLE, "[i]t is incumbent upon the test-taker to *synthesize the fact pattern provided* while referencing the universe of information on which he or she is to base a decision." *Depersia v. United States*, 637 F. Supp. 2d 1244, 1252 (2009) (emphasis added). In other words, it is plaintiff's obligation to consider the facts of the question, without making unnecessary outside assumptions; indeed, the "absence" of facts in the exam context does not indicate a lack of substantial evidence but rather represents a limitation on the fact pattern at issue.

Here, CBP's alleged "failure to identify the type and value of the imported cargo," Pl.'s

Br. at 12, was one such limitation on the fact pattern. Because no facts present in the fact pattern suggested that the special rule or exemption was implicated, there was no basis for plaintiff to assume anything other than the default rule applied. Moreover, plaintiff points to nothing in the special rule that would support her answer choice of "Weekly" (nor could she, as the regulation does not provide for weekly payment of the harbor maintenance fees under any circumstances). Accordingly, Question No. 16 was more than "adequate," *Di Iorio*, 14 CIT at 748-49, such that R&R's rejection of plaintiff's appeal was reasonable. The Court should reject plaintiff's attempt to "ignore the stated facts of the question" at issue to create false ambiguities. *Kenny*, 401 F.3d at 1362.

### Question No. 20

Which piece of information is NOT a requirement on a commercial invoice?

A.    All rebates, drawbacks, and bounties, separately itemized, allowed upon the exportation of the merchandise.

**B.    An itemized list by name and amount of packing, cases, containers, and inland freight to the port of exportation, if included in the invoice price, and so identified.**

C.    The kind of currency, whether gold, silver, or paper.

D.    The port of entry to which the merchandise is destined.

E.    The name of a responsible employee of the exporter, who has knowledge, or who can readily obtain knowledge, of the transaction.

In scoring the exam, CBP designated the correct answer as (B) "An itemized list by name and amount of packing, cases, containers, and inland freight to the port of exportation, if included in the invoice price, and so identified." Plaintiff selected answer choice (E) "The name of a responsible employee of the exporter, who has knowledge, or who can readily obtain knowledge, of the transaction."

CBP relied on 19 C.F.R. § 141.86 as support for its answer.  *See* AR 40-42.  Section 141.86(a) sets forth the eleven categories of information that are required on an invoice.  The information contained in answer choice (A) ("All rebates, drawbacks, and bounties, separately itemized, allowed upon the exportation of the merchandise" *see* section 141.86(a)(9)), answer choice (C) ("The kind of currency, whether gold, silver, or paper" *see* section 141.86(a)(7)), and answer choice (D) ("The port of entry to which the merchandise is destined" *see* section 141.86(a)(1)), are expressly required on an invoice or attachment per section 141.86(a).  AR at 41.  The information in choice (E) is required by 19 C.F.R. § 141.86(j) ("Each invoice of imported merchandise must identify by name a responsible employee of the exporter, who has knowledge, or who can readily obtain knowledge, of the transaction).  *Id*.  However, the regulation **does not** require the information set forth in answer choice (B), which is "[a]n itemized list by name and amount of packing, cases, containers, and inland freight to the port of exportation, if included in the invoice price, and so identified."  Indeed, section 141.86(a)(8) states that "[t]he cost of packing, cases, containers, and inland freight to the port of exportation *need not be itemized* by amount if included in the invoice price, and so identified."  Answer (B) is therefore correct.

Notwithstanding the clear language of Question No. 20 and the answer choices, plaintiff again argues that the question does not contain sufficient facts to choose a correct answer.  Pl.'s Br. at 14.  Specifically, relying on Section 141.86(i)[2], plaintiff argues that the question "fails to account for the possibility that the required information would not appear on the commercial invoice, but instead on a substitute document."  *Id*.  Like with Question No. 16, plaintiff is attempting to "tak[e] a portion of the question and formul[ate] [her] own factual scenarios," which

---

[2] 19 C.F.R. § 141.86(i) provides: "***Information may be on invoice or attached thereto.*** Any information required on an invoice by any provision of this subpart may be set forth either on the invoice or on an attachment thereto."

is not permitted.  *Di Iorio*, 14 CIT at 751.  Question No. 20 is straightforward in that it only asks the examinee to identify information that is **not** required on an invoice, and it can be correctly answered by consulting section 141.86.  Indeed, the question makes no reference to an attachment to an invoice or information contained on such an attachment.  Plaintiff is not permitted to "unilaterally rewrite the question" in an attempt to infuse ambiguity into the question.  Question No. 20 contained the necessary information to reach the correct answer choice (B).

Moreover, according to plaintiff, "[i]f a separate attachment contains all the required information, then a commercial invoice would contain none of the information set forth in the five answer choices" for Question No. 20.  Pl.'s Br. at 14.  Plaintiff is incorrect.  Plaintiff's selection of answer choice (E) is not an enumerated requirement in section 141.86.  Plaintiff has made no attempt to explain why answer choice (E), which is a *verbatim* recitation of the requirement in section 141.86(j), is correct.

Relying on 19 C.F.R. § 142.6(a)[3], plaintiff further argues that "Question No. 20 fails to account for the fact that a commercial invoice is not required with the entry of merchandise."  Pl.'s Br. at 15.  According to plaintiff, "[i]f the commercial invoice itself is not required, the types of information provided in the answer choices cannot qualify as 'requirement[s] on a commercial invoice.'"  *Id*. at 15.  Plaintiff again attempts to rewrite the question.  Section 142.6(a) states that,

---

[3] 19 C.F.R. § 142.6 provides in relevant part:

**§ 142.6 Invoice requirements.**

(a) ***Contents.*** The commercial invoice, or the documentation acceptable in place of a commercial invoice in those instances listed in § 141.83(d) of this chapter, shall be furnished with the entry and before release of the merchandise is authorized. The commercial invoice or other acceptable documentation shall contain: …

in circumstances set forth in section 141.83, certain documentation is acceptable in place of a commercial invoice.  As written, Question No. 20 does not identify any of the circumstances identified in section 142.6(a).  Furthermore, the fact that commercial invoices are not always required is of no moment because nothing in the text of the question requires that the examinee determine whether an invoice is required or not.  Question No. 20 is fairly circumscribed in that it asks what piece of information is **not** a requirement on a commercial invoice.  Accordingly, the only correct answer is "B" and CBP's decision to deny plaintiff's challenge as to this question is supported by substantial evidence.

### Question No. 34

An article of base metal containing two or more base metals is classified by the metal that _____.

A.    Is referenced last in the HTSUS

B.    Imparts the essential character of the article

**C.    Predominates by weight over each of the other metals**

D.    Has the highest value

E.    Is essential to its actual use

In grading the exam, CBP designated (C), "Predominates by weight over each of the other metals," as the correct response.  Plaintiff selected (B), "Imparts the essential character of the article."  R&R explained that "GRI 1 establishes that classification shall be determined according to the terms of the headings and any relative chapter or legal notes," and that Legal Note 7 of Section XV of the HTSUS (2020 Basic Edition) provides that for "articles of base metal containing two or more base metals are classified by the base metal predominating by weight."  AR at 48. Because Question No. 34 explicitly references an "article of base metal," and the application of GRI 1 applies to the classification question, R&R explained that resort to GRI 3(b), the test to

determine the essential character of an article, was unnecessary.  *Id.*

CBP's answer choice, as dictated by the proper application of the GRIs, is the best answer and should be upheld.  "While the factual findings of the Secretary must be based on substantial evidence, both 19 U.S.C. § 1641 and 28 U.S.C. § 2640 are silent as to the standard of review the Court should apply to legal questions in a customs broker's license denial case."  *Depersia*, 637 F. Supp. 2d at 1247.  Therefore, the Court follows the Administrative Procedure Act's (APA) "general guidance."  *Id.* (citation omitted).  Under the APA's standard, the court will only set aside the "final administrative determination of the Secretary" where the decision made was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see Depersia*, 637 F. Supp. 2d at 1247.  Here, CBP's reading of GRI 1 and the relevant section notes of the HTSUS is consistent with Federal Circuit precedent guiding the agency's interpretation of its governing statutes.  Specifically, within the HTSUS—a statute—"proper classification of merchandise entering the United States is governed by the General Rules of Interpretation ('GRIs')."  *Otter Prods., LLC v. United States*, 834 F.3d 1369, 1375 (Fed. Cir. 2016) (citing *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998)). "According to GRI 1, the HTSUS headings, as well as *relative section or chapter notes*" control classification. *Orlando Food Corp.*, 140 F.3d at 1440 (emphasis added) ("In other words, a court first construes the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading.").

Plaintiff's argument to the contrary, Pl's Br. at 17-18, again misses the mark by imposing an obligation that CBP's test questions contain all possible permutations of facts that could theoretically bear upon classification of a good.  But "perfect questions," *Chae v. Yellen*, 570 F.

Supp. 3d 1343, 1351 (Ct. Int'l Trade 2022) (citation omitted), is not the relevant standard;

reasonableness is.  Had Question No. 34 included certain other details that plaintiff alludes to—

such as, for instance, the precise chemical composition of the article—that information might well

have been relevant to the answer.  Here, though, the information available to the test-taker was that

the article to be classified was "of base metal containing two or metals," and the question was

testing the test-takers' ability to apply the GRIs.  Based on that information, as well as the answer

choices, CBP's selection of (C), "Predominates by weight over each of the other metals," is plainly

supported by substantial evidence, and rejection of plaintiff's appeal was more than "reasonable."

*Di Iorio*, 14 CIT at 748-49.

### Question No. 44

What is the **CLASSIFICATION** of an automatic baseball pitching machine that releases five time-delayed balls in succession? The pitching machine is constructed of bright colored plastic and operates using four D cell batteries, which power the launcher and audible sound that signals when the next ball is coming. The product also includes a hollow yellow plastic bat and five white hollow plastic balls. Additionally, beginners can convert the product into a miniature T-ball set. It is recommended for children aged 3 years and older.

A.    9503.00.0071

**B.    9503.00.0073**

C.    9504.90.9080

D.    9506.69.2040

E.    9506.99.1500

In grading the exam, CBP designated (B), subheading 9503.00.0073, HTSUS, as the correct

response.  Plaintiff selected (D), subheading 9506.69.2040.

Heading 9503 of the HTSUS (2020 Basic Edition) covers "[t]ricycles, scooters, pedal cars

and similar wheeled toys; dolls' carriages; dolls, other toys; reduced-scale ("scale") models and

similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof."

Heading 9506 covers "[a]rticles and equipment for general physical exercise, gymnastics, athletics, other sports (including table-tennis) or outdoor games, not specified or included elsewhere in this chapter; swimming pools and wading pools; parts and accessories thereof."

Answer choice (B) is the best answer to Question No. 44 and should be upheld.  CBP explained that the first step is determining the correct heading for classification of the merchandise. AR at 66.  CBP applied General Rule of Interpretation (GRI) 1 ("…classification shall be determined according to the terms of the headings and any relative section or chapter notes . . .") and GRI 6 (". . . the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, mutatis mutandis, to the above rules, on the understanding that only subheadings at the same level are comparable…") to determine that the pitching machine was described by or met the terms of heading 9503, HTSUS, and conversely, that the machine was not described by or met the terms of the headings 9504 and 9506, HTSUS.  A.R. at 57.

Here, the facts included in Question No. 44 indicate that the pitching machine is intended for children's play (*i.e.*, as a "toy"), rather than "general physical exercise, gymnastics, athletics, [or] other sports."  The machine releases "time-delayed balls," is made of "bright colored plastic," signals the ball release with an "audible sound," includes "hollow" plastic bat and balls, and can be converted "into a miniature T-ball set" for beginners as young as three years old.

A review of relevant caselaw confirms that CBP's answer choice (B), classifying the pitching machine under heading 9503, is in accordance with existing law interpreting the terms of both headings.  The term "toys" in heading 9503 is not defined by statute, but this Court has found "inherent" in common and commercial definitions of "toys" "the notion that an object is a toy only

if it is designed and used for amusement, diversion or play, rather than practicality." *Minnetonka Brands, Inc. v. United States*, 24 CIT 645, 650 (2000) (citing *Orlando Food Corp.*, 140 F.3d at 1441 (Fed. Cir. 1998)).

By contrast, this Court's decisions interpreting the term "sports equipment" underscore why heading 9506 (plaintiff's selection) does *not* cover the pitching machine described in Question No. 44. *Lemans Corp. v. United States*, 660 F.3d 1311, 1318 (Fed. Cir. 2011) ("The term 'sports equipment' is not defined in the HTSUS, so we are to look to the common and popular meaning of the term. … Here, the CIT correctly cited the dictionary definition of 'equipment' to find that '[t]o qualify as "equipment" for a sport, the good should generally provide "what is necessary, useful, or appropriate [for that sport].""" (citations omitted)). The fact pattern of Question No. 44 makes apparent by describing the materials of the pitching machine and its accompanying equipment that it would not be "useful, or appropriate" for use in baseball, as opposed to a child's amusement and play in more than one mode (pitching or T-ball).

During the course of this appeal, CBP stated that the pitching machine was described by the term "reduced-scale ('scale') models and other similar recreational models, working or not" within 9503. The exam question was based on Customs ruling, HQ H010584 (Dec. 18, 2007), which stated that the pitching machine at issue was classifiable under a no-longer-in-effect subheading of 9503 covering "Other toys…: Other toys and models, incorporating a motor, and parts and accessories thereof." *See* AR at 72-73. Although in its response CBP refers to the merchandise as a "reduced-scale model" within heading 9503 rather than a "toy" within heading 9503, answer

choice (B) is clearly correct.[4]  As discussed, heading 9503 encompasses both "reduced-scale

('scale') models and similar recreational models" and "other toys,"[5] and did not require plaintiff to

distinguish between the two to reach the correct answer.  Indeed, both the record and plaintiff's

briefing show that her selection of answer choice (D) was not based on the identification of an

ambiguity based on some perceived difference between "models" and "toys."  Instead, plaintiff's

insistence that "there is no indication that the merchandise is anything but a full-sized, fully

functioning automatic baseball pitching machine," Pl.'s Br. at 20, "ignore[s] the stated facts of the

question."  *Kenny*, 401 F.3d at 1362.  Specifically, plaintiff ignored how a machine pitching hollow

plastic balls and designed for ages "3 years and older" is suited for children's play, but not the kind

of "general physical exercise" described in heading 9506.

  With the other potential four-digit headings[6] eliminated from contention in accordance with

GRI 1, CBP's correct answer choice (B) is further supported because of the subsequent language

attached to statistical reference number 9503.00.0073: "'Children's products' as defined in 15

---

  [4] There is indication that the pitching machine is reduced in scale, since it can convert to a miniature T-ball machine.  *See* "Miniature." *Merriam-Webster.com Dictionary*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/miniature (last accessed May 14, 2024) (defining "miniature" as "a copy on a much reduced scale").

  [5] A reduced-scale model classifiable under heading 9503 may also be a kind of toy.  *Cf. Mattel, Inc. v. United States*, 950 F. Supp. 353, 356 (Ct. Int'l Trade 1996) ("[I]f the model is intended for manipulation or simulation of use, that can hardly be distinguished from play or amusement. So it is pointless to draw a strict distinction between models and the common understanding of toys." (discussing a prior version of heading 9503)).

  [6] Though not raised by plaintiff, heading 9504 covers "[v]ideo game consoles and machines, articles for arcade, table or parlor games, including pinball machines, bagatelle, billiards and special tables for casino games; automatic bowling alley equipment; parts and accessories thereof."  The pitching machine is plainly neither described by nor meets the terms of that heading, specifically, "video game consoles and machines, articles for arcade, table or parlor games" or "automatic bowling alley equipment."  Thus, answer choice (C) is incorrect.

U.S.C. § 2052[7]: Other: Labeled or determined by importer as intended for use by persons: 3 to 12 years of age."  AR at 58.  Statistical Note 1 to Chapter 95 of the HTSUS provides as follows:

> In heading 9503, classification is based on the youngest age for which the product is intended. For example, an item labeled "For ages 2–5" would be appropriately classified in the "Under 3 years of age" category. Parts and accessories, if not specifically labeled for a specific age, should be classified under the age designation that would be applicable to the finished retail product of which it is a component or in which it is incorporated.

As previously noted, the language of Question No. 44 expressly indicates that the pitching machine "is recommended for children aged 3 years and older."  Therefore, considering the facts of the question and the language of the HTSUS and its contents, plaintiff should have eliminated answer choice (A) in addition to (C), (D), and (E), and selected (B).

## <u>CONCLUSION</u>

For all of the above reasons, the Government respectfully requests this Court to deny plaintiff's motion for judgment on the agency record, enter judgment for the United States, and dismiss this action.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Acting Assistant Attorney
General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge

---

7 15 U.S.C. § 2052(a)(2) states that "[t]he term 'children's product' means a consumer product designed or intended primarily for children 12 years of age or younger."

International Trade Field Office

By:    /s/ Aimee Lee
       AIMEE LEE
       Assistant Director

       /s/ Marcella Powell
       MARCELLA POWELL
       Senior Trial Counsel

Emma Tiner                              /s/ Nico Gurian
Office of Assistant Chief Counsel       NICO GURIAN
International Trade Litigation           Trial Attorney
U.S. Customs and Border Protection      Civil Division, Dept. of Justice
                                        Commercial Litigation Branch
                                        26 Federal Plaza – Suite 346
                                        New York, NY 10278
                                        Tel. (212) 264-9230 or 1873
Dated: New York, New York               Attorneys for Defendant
       December 19, 2024

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this response brief contains 5,547 words, excluding any materials excluded from those Procedures' requirements, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Nico Gurian