# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE LISA W. WANG, JUDGE

———————————————————————— :
:
SKEETER-JO STOUTE-FRANCOIS,                      :
:
Plaintiff,                        :
:
v.                              :          Court No. 24-00046
:
JANET YELLEN, SECRETARY OF THE       :
TREASURY, UNITED STATES                        :
DEPARTMENT OF THE TREASURY,           :
UNITED STATES OF AMERICA,                    :
:
Defendants.                     :
:
———————————————————————— :

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF RULE 56.1 MOTION FOR JUDGMENT ON THE AGENCY RECORD

<div style="text-align:center">

Devin S. Sikes
Yujin K. McNamara
Sarah P. Tinaphong
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, D.C. 20006

*Counsel for Plaintiff*

</div>

January 24, 2025

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

ARGUMENT ........................................................................................ 2

    I.    Neither the Law nor Substantial Evidence Supports
          CBP's Determinations ............................................................ 2

        A.    Question 16 ................................................................. 2

        B.    Question 20 ................................................................. 8

        C.    Question 34 ............................................................... 12

        D.    Question 44 ............................................................... 14

CONCLUSION ................................................................................. 23

## TABLE OF AUTHORITIES

Page(s)

Cases

*Bell v. United States*,
    839 F. Supp. 874 (Ct. Int'l Trade 1993) ............................................... 11

*Calgon Carbon Corp. v. United States*,
    145 F. Supp. 3d 1312 (Ct. Int'l Trade 2016) ....................................... 22

*Carrier v. United States*,
    20 Ct. Int'l Trade 227 (1996) ....................................................... 13, 14

*Chae v. Yellen*,
    579 F. Supp. 3d 1343 (Ct. lnt'l Trade 2022).................................... 4, 13

*Chae v. Yellen*,
    No. 2022-2017, 2023 WL 3072385
    (Fed. Cir. Apr. 25, 2023) ............................................................ *passim*

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) ........................................................................... 15

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020) ........................................................................ *passim*

*Depersia v. United States*,
    637 F. Supp. 2d 1244 (Ct. Int'l Trade 2009) ..................................... 1, 5

*Diamond Sawblades Mfrs. Coal. v. United States*,
    37 Ct. Int'l Trade 1501 (2013) ......................................................... 5, 6

*Di Iorio v. United States*,
    14 Ct. Int'l Trade 746 (1990) .................................................. 1, 10, 13

*Harak v. United States*,
    30 Ct. Int'l Trade 908 (2006) ............................................. 7, 13, 14, 22

*Lemans Corp. v. United States*,
  660 F.3d 1311 (Fed. Cir. 2011) .......................................................... 20

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ............................................................................... 22

*In re Nuvasive, Inc.*,
  842 F.3d 1376 (Fed. Cir. 2016) .......................................................... 22

*O'Quinn v. United States*,
  100 F. Supp. 2d 1136 (Ct. Int'l Trade 2000) ....................... 7, 13, 14, 22

*Vermont Yankee Nuclear Power Corp. v. NRDC*,
  435 U.S. 519 (1978) ............................................................................... 7

## Statutes

19 U.S.C.
  § 1641(e)(3) ........................................................................................... 11

## Regulations

19 C.F.R.
  § 24.24 ...................................................................................................... 3
  § 24.24(d)(4) ............................................................................................. 3
  § 24.24(f) ............................................................................................... 7, 8
  § 141.83(d) ............................................................................................ 9, 11
  § 141.86(i) ............................................................................................. 9, 11

## Other Authorities

Explanatory Notes to Heading 9506, Subsection B(12) ................... 20, 21

## INTRODUCTION

Plaintiff fell just short of obtaining a passing score on the customs broker license exam ("CBLE") and demonstrated in her opening brief why U.S. Customs & Border Protection ("CBP") erred in denying her credit for her answers to Questions 16, 20, 34, and 44.  In its response brief, the Government mostly dodges Plaintiff's arguments and baselessly and repeatedly accuses Plaintiff of "unilaterally rewrit{ing}" the contested questions.  *See, e.g.*, Def. Br. 11.  But patent flaws in Questions 16, 20, 34, and 44 render them inconclusive and, consequently, CBP's decisions to deny Plaintiff credit for these Questions are unsupported by substantial evidence and not in accordance with law.

Apart from raising unsupported distractions, the Government advances a series of impermissible *post hoc* justifications, misconstrues the applicable standard of review, fails to address several of Plaintiff's arguments, and improperly relies on *Di Iorio v. United States*, 14 Ct. Int'l Trade 746 (1990) and *Depersia v. United States*, 637 F. Supp. 2d 1244 (Ct. Int'l Trade 2009), neither of which bears on the issues in this case. Indeed, the Government's arguments underscore that the defects in the

contested Questions persist and that CBP erroneously denied Plaintiff credit for these Questions.

To obtain a passing score, Plaintiff requires credit for only two of the four contested Questions. Because substantial evidence and the law confirm that Plaintiff deserves credit for these Questions, the Court should vacate and remand.

## ARGUMENT

## I.  Neither the Law nor Substantial Evidence Supports CBP's Determinations

The instant dispute boils down to whether CBP properly concluded that Plaintiff should be denied credit on her answers to Questions 16, 20, 34, and 44 of the CBLE and, in turn, denied a customs broker license. A.R. 72-80.[1] The Government avers that CBP's determinations are free from legal and factual defect. Def. Br. 6-18. The law and record demonstrate otherwise.

### A.  Question 16

Question 16 of the October 2021 CBLE asks:

In cases where imported cargo is unloaded from a commercial vessel at a port within the definition of 19 CFR 24.24 Harbor maintenance fee, and admitted into a foreign trade zone, the

---

[1] "A.R." refers to the administrative record filed by Defendants. ECF 15.

applicant for admission who becomes liable for the fee must pay all fees for which he is liable on a _____ basis.

A. Yearly
B. Daily
C. Monthly
D. Quarterly
E. Weekly

A.R. 73.  Plaintiff selected choice E, while CBP designated choice D as the correct answer.  *Id.*  The Government offers several reasons for the Court to sustain CBP's determination, Def. Br. 6-9, yet the Government's arguments miss the mark.

As an initial matter, the Government fails to squarely address Plaintiff's argument that Question 16 lacks sufficient information, such that the Question is inconclusive.  In reiterating CBP's rationale and conclusory statements, the Government overlooks the key issue at hand: without sufficient information on the cargo in question, the frequency of payments for the Harbor Maintenance Fee *cannot* be determined per 19 C.F.R. § 24.24.  As explained in Plaintiff's Opening Brief, if the value of the imported cargo is less than $10,000, 19 C.F.R. § 24.24(d)(4) unequivocally instructs that "{q}uarterly payment is not required{.}"  Pl. Br. 12.  CBP's omission of sufficient information on the cargo in Question 16 renders it indeterminable whether quarterly payment is or is not

required.  This Question and the issue it presents fall squarely within a scenario contemplated by this Court (and endorsed by the Federal Circuit): "the CIT has granted examinees credit on appeal when . . . the inclusion or omission of language would result in the question not containing sufficient information for an applicant to choose an answer." *Chae v. Yellen*, No. 2022-2017, 2023 WL 3072385, at *2 (Fed. Cir. Apr. 25, 2023) (cleaned up).  To deny an applicant credit for a question that lacks sufficient information for the applicant to meaningfully respond is unreasonable and plainly unsupported by substantial evidence.

The Government acknowledges Plaintiff's argument (Def. Br. 8), but it does not directly address it.  Instead, the Government attempts to shift the Court's review away from CBP's decision and fault Plaintiff for "point{ing} to nothing in the special rule that would support her answer choice of 'Weekly.'"  *Id.* at 9.  However, that retort does not answer whether CBP supported its decision with substantial evidence, such as by providing sufficient information in a question so that the applicant can choose an answer.  *Chae v. Yellen*, 579 F. Supp. 3d 1343, 1353 (Ct. Int'l Trade 2022) (holding that "a question or term {} susceptible of more than one interpretation will fail to meet the substantial evidence

4

standard" if "the inclusion or omission of language would result in the question not containing sufficient information for an applicant to choose an answer" (cleaned up)); *see* Pl. Br. 7-9.  Here, CBP's question lacked sufficient information as to the cargo in question, such that its decision was unsupported by substantial evidence.  *See* Pl. Br. 10-13.

Apart from failing to directly address Plaintiff's argument that Question 16 lacks sufficient information, the Government improperly relies on *Depersia* to support CBP's decision as to Question 16.  Def. Br. 8.  *Depersia* hinged upon the applicant's misinterpretation of the plain meaning of the contested question and answer choices, in that the applicant misinterpreted the right to *request* a ruling as the right to *receive* a ruling.  *See* 637 F. Supp. 2d at 1248-52.  By contrast, the issue here is whether Question 16 contained the requisite sufficient information to allow Plaintiff to make an informed choice.  Unlike in *Depersia*, Plaintiff here has not misinterpreted the meaning of a word, but rather lacked sufficient information regarding the imported cargo to answer this Question.

The Government also alleges that Plaintiff "misconstrue{d} the relevant standard of review in CBLE review cases" by citing *Diamond*

*Sawblades Mfrs. Coal. v. United* States, 37 Ct. Int'l Trade 1501, 1511 (2013) for the proposition that "{t}he absence of evidence is not evidence of absence." Def. Br. 8. But that legal principle is well-established under the substantial evidence standard, which the Government concedes applies here. *Id.* at 5. Although *Diamond Sawblades* did not concern a challenge to the results of a CBLE, it did concern the application of the same substantial evidence standard that governs here. *See* 37 Ct. Int'l Trade at 1501-02 ("{T}he standard of judicial review . . . whether the administrative determination is unsupported by substantial evidence on the record . . . necessarily frames the issues." (cleaned up)).

The Government attempts to diminish the relevance of this legal principle by averring that "the 'absence' of facts in the exam context does not indicate a lack of substantial evidence but rather represents a limitation on the fact pattern at issue." Def. Br. 8. However, the Government's argument ignores that this Court has repeatedly found that the absence of sufficient facts in an exam question (as here) is not evidence of a limitation, but rather a reflection that the question lacks sufficient information that would enable the applicant to make a choice. *See, e.g.*, *Chae*, 2023 WL 3072385, at *2 ("The CIT has granted examinees

credit on appeal when . . . the inclusion or omission of language would result in the question not containing sufficient information for an applicant to choose an answer." (cleaned up)); *Harak v. United States*, 30 Ct. Int'l Trade 908, 917 (2006) ("If {a CBLE} question does not contain sufficient information to choose an answer, it may be considered faulty in its drafting and disposed of accordingly."); *O'Quinn v. United States*, 100 F. Supp. 2d 1136, 1140 (Ct. Int'l Trade 2000) (finding CBP's denial of credit for a question "unreasonable" when "the question does not contain sufficient information to choose an answer").

Finally, the Government's other rationales defending CBP's decision as to Question 16 are *post hoc*. "An agency must defend its actions based on the reasons it gave when it acted," not "belated justifications" and "impermissible *post hoc* rationalizations." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22-24 (2020); *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 549 (1978) ("{W}hen there is a contemporaneous explanation of the agency decision, the validity of that action must stand or fall on the propriety of that finding{.}" (cleaned up)). Here, the Government runs afoul of the bar on *post hoc* rationalizations. For example, the Government argues that 19

C.F.R. § 24.24(f) "provides additional support that the question references the default rule outlined in subsection (e)" and that "the context of the other answer choices . . . does not suggest that the *de minimis* rule in {19 C.F.R. § 24.24(d)}, or any exemption, should be taken into account." Def. Br. 8. CBP did not provide either of these rationales as the basis for its decision. *See, e.g.*, A.R. 73.[2] The Court must therefore disregard them. *See Regents*, 591 U.S. at 22.

## B.   Question 20

Question 20 of the October 2021 CBLE asks:

Which piece of information is NOT a requirement on a commercial invoice?

A.    All rebates, drawbacks, and bounties, separately itemized,   allowed upon the exportation of the merchandise.
B.    An itemized list by name and amount of packing, cases, containers, and inland freight to the port of exportation, if included in the invoice price, and so identified.
C.    The kind of currency, whether gold, silver, or paper.
D.    The port of entry to which the merchandise is destined.
E.    The name of a responsible employee of the exporter, who has knowledge, or who can readily obtain knowledge, of the transaction.

---

[2] As Plaintiff explained in her Opening Brief, she has addressed "the reasons provided by CBP in its May 2024 corrected notice because those are 'the grounds that the agency invoked when it took the action' as to Plaintiff's final score on the CBLE." Pl. Br. 10 n.5 (quoting *Regents*, 591 U.S. at 20)); *see* A.R. 72-80.

A.R. 74.  Plaintiff selected choice E, but CBP designated choice B as the correct answer.  *Id.*  The Government's defense of CBP's position once again fails to adequately address Plaintiff's arguments.

First, the Government's arguments do not resolve the issue that Plaintiff has identified.  The Government remarks that "the question makes no reference to an attachment to an invoice or information contained on such an attachment," without acknowledging that the Question is defective for this very reason.  Def. Br. 11.  As Plaintiff explained, CBP's regulations provide that if a separate attachment to the commercial invoice contains all the required information, or if documentation is submitted in place of the commercial invoice, then none of the information contained in all five answer choices would be required on the invoice.  *See* Pl. Br. 14-15; *see also* 19 C.F.R. §§ 141.86(i), 141.83(d).  CBP's silence on the possibilities of a separate attachment or substitute documentation in this Question renders it materially incomplete.  As a result, Plaintiff has not "rewri{tten} the question" (Def. Br. 11), but rather revealed a significant flaw associated with the Question's disregard for the exceptions that CBP has built into 19 C.F.R. §§ 141.83 and 141.86.

Second, the Government cites to authority which provides no guidance for the issues at hand. In support of its position, the Government cites to *Di Iorio* for the proposition that Plaintiff cannot "tak{e} a portion of the question and formul{ate} {her} own factual scenarios." Def. Br. 10-11 (citing 14 Ct. Int'l Trade at 751). However, the Government takes this passage from *Di Iorio* out of context. In *Di Iorio*, the contested question asked applicants to assess a scenario in which "FDA determines that the {client's imported} merchandise is not fit for human consumption," and select an answer choice advising the client of next steps. 14 Ct. Int'l Trade at 750-51. The applicant in *Di Iorio* challenged CBP's denial of credit for this question, arguing that "{r}ather than taking this determination {that the merchandise is unfit for human consumption} as a fact given in the question, plaintiff maintains that he would argue with the FDA testing of the product." *Id.* at 751. This Court determined that "{the applicant} cannot unilaterally rewrite the question" and upheld CBP's denial of credit for this question. *Id.* By contrast, Plaintiff here is not rewriting Question 20 in a way that contradicts or suspends any of the facts provided, but rather has identified material gaps in the Question that made it impossible for her

10

to make an informed choice regarding whether the exceptions in 19 C.F.R. §§ 141.83(d) and 141.86(i) apply.

Finally, the Government continues to misconstrue the standard of review. As with Question 16, the Government attempts to shift the focus away from CBP's decision on Question 20 and asks the Court to determine whether substantial evidence supports Plaintiff's selected answer. Def. Br. 11. That is not the test. Under the substantial evidence standard, the Court must determine whether substantial evidence supports *CBP's* decision (not Plaintiff's), a point that the Government elsewhere concedes (as it must). *See* Def. Br. 5 (discussing the application of the substantial evidence standard); *see also* 19 U.S.C. § 1641(e)(3) (requiring "substantial evidence" to support CBP's fact-findings).[3]

---

[3] The Government also agrees with Plaintiff that CBP must engage in reasoned decision-making and otherwise reasonably explain the choices it makes. *See* Def. Br. 6 (discussing the reasonableness standard), 13 (acknowledging that CBP may not make arbitrary and capricious decisions); Pl. Br. 9–10 (same); *accord Chae*, 2023 WL 3072385, at *2 (same); *Bell v. United States*, 839 F. Supp. 874, 880 (Ct. Int'l Trade 1993) ("While the government is not required to explain the basis for its decision to deny plaintiff's license application in minute detail, administrative agencies must still articulate the factual underpinnings of their findings" and "a satisfactory explanation, including a rational connection between the facts found and the choice made." (cleaned up)).

C.    **Question 34**

Question 34 of the October 2021 CBLE asks:

An article of base metal containing two or more base metals is classified by the metal that _____.
A.      Is referenced last in the {Harmonized Tariff Schedule of the United States (HTSUS)}
B.      Imparts the essential character of the article
C.      Predominates by weight over each of the other metals
D.      Has the highest value
E.      Is essential to its actual use

A.R. 75.  Plaintiff selected choice B, but CBP designated choice C as the correct answer.  *Id.*

In defense of CBP's determination, the Government accuses Plaintiff of "imposing an obligation that CBP's test questions contain all possible permutations of facts that could theoretically bear upon classification of a good."  Def. Br. 13.  Not so.  Plaintiff nowhere argues that CBP's questions must contain *all possible* permutations of facts.  *See* Pl. Br. 17-18.  Instead, consistent with precedent, Plaintiff contends that CBP's questions must contain *sufficient* facts to enable the applicant to make an informed decision.  *See, e.g.*, *Chae*, 2023 WL 3072385, at *2 (holding that the Court may "grant{} examinees credit on appeal when . . . the inclusion or omission of language would result in the question not containing sufficient information for an applicant to choose an answer"

(cleaned up)); *Chae*, 579 F. Supp. 3d at 1351 (similar); *Harak*, 30 Ct. Int'l Trade at 922 ("If a question is ambiguously drafted or does not contain sufficient information to choose an answer, it may be considered faulty."); *O'Quinn*, 100 F. Supp. 2d at 1140 (granting plaintiff credit for an answer when a contested question suffered from "faulty drafting"); *Carrier v. United States*, 20 Ct. Int'l Trade 227, 232 (1996) (similar).  Indeed, the very cases which the Government draws on for support reflect this same proposition:  "{w}hile not perfect," the exam question must be "adequate so that . . . plaintiff's appeal was rejected reasonably." *Chae*, 579 F. Supp. 3d at 1351 (quoting *Di Iorio*, 14 Ct. Int'l Trade at 748-49).

As Plaintiff explained in her Opening Brief, Question 34 lacks sufficient information regarding the "article of base metal" at issue, such that substantial evidence does not support CBP's decision to deny Plaintiff credit for this Question. *See* Pl. Br. 17.  Question 34 asks the applicant to classify an unidentified article without providing information that is material to the classification of the article (e.g., whether the article has an actual use, whether the article includes components, what the object is). *See id*.  As Plaintiff explained, an "article of base metal" could fall under any number of HTSUS Headings

and would be classified differently depending on the applicable HTSUS Heading and Subheading. *See id.* at 17-18 (discussing the different HTSUS Headings that could apply to different articles of base metal). Plaintiff's simple proposition that an exam question should include relevant, material information that allows the applicant to properly classify the article is miles apart from how the Government characterizes that proposition. Def. Br. 13 (claiming that Plaintiff would require CBP to ensure that its questions "contain all possible permutations of facts that could theoretically bear upon classification of a good"). Put simply, the Government has overstated Plaintiff's straightforward argument that, consistent with decisions from the Federal Circuit and this Court, exam questions should contain sufficient information to enable the applicant to choose an answer. *See Chae*, 2023 WL 3072385, at *2; *Harak*, 30 Ct. Int'l Trade at 917, 922; *O'Quinn*, 100 F. Supp. 2d at 1140; *Carrier*, 20 Ct. Int'l Trade at 232.

### D.   Question 44

Question 44 of the October 2021 CBLE asks:

What is the CLASSIFICATION of an automatic baseball pitching machine that releases five time-delayed balls in succession? The pitching machine is constructed of bright colored plastic and operates using four D cell batteries, which power the launcher and audible sound that signals when the

next ball is coming.  The product also includes a hollow yellow plastic bat and five white hollow plastic balls.  Additionally, beginners can convert the product into a miniature T-ball set. It is recommended for children aged 3 years and older.

   A.  9503.00.0071
   B.  9503.00.0073
   C.  9504.90.9080
   D.  9506.69.2040
   E.  9506.99.1500

A.R. 76.  Plaintiff selected choice D, but CBP designated choice B as the correct answer.  *Id.*  The Government's defense of CBP's determination falls short, as the Government's arguments are *post hoc* and fail to resolve the defect inherent in this Question.

As an initial matter, the Government once again improperly raises *post hoc* rationalizations to support CBP's decision.  As explained above, *post hoc* rationalizations are plainly "impermissible," *Regents*, 591 U.S. at 22, and "a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record," *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019).  In defending CBP's decision as to Question 44, the Government advances *entirely new reasons* for the decision.  For example, the Government attempts to argue that the merchandise should be classified as a "toy" under HTSUS Heading 9503.  Def. Br. 15-16.  But in the operative determination that

is the subject of this appeal, CBP makes no mention of toys.[4] A.R. 76-77.
Instead, CBP clearly indicates that it viewed this merchandise as a
reduced-scale model under HTSUS Heading 9503 (*id.*), a point that the
Government concedes.  Def. Br. 16-17 (acknowledging that "CBP refers
to the merchandise as a 'reduced-scale model' within heading 9503 rather
than a 'toy' within heading 9503").  The Government *cannot* cure defects
in CBP's decision by analyzing the issue afresh and advancing a new
theory on appeal and, thus, the Court *must* disregard these
impermissible *post hoc* rationalizations.  *See Regents*, 591 U.S. at 24
(rejecting the Government's attempt to "cut{} corners to allow {the
agency} to rely upon reasons absent from its original decision").

Even if the Court accepts the Government's *post hoc*
rationalizations (and it should not), the Government's arguments reveal
the fundamental issue with Question 44, which unreasonably calls for
knowledge that an examinee would have no reasonable basis to possess.
As Plaintiff has explained, the Question, on its own, does not provide
sufficient information for an applicant to determine that the "automatic

---

[4] As Plaintiff has explained, she addresses "the reasons provided by CBP in its
May 2024 corrected notice because those are 'the grounds that the agency invoked
when it took the action' as to Plaintiff's final score on the CBLE."  Pl. Br. 10 n.5
(quoting *Regents*, 591 U.S. at 20).

baseball pitching machine" in question is in fact not sports equipment, but a reduced-scale model. *See* Pl. Br. 20-21; A.R. 76. The Question also erroneously assumes that aspiring customs brokers would have familiarity with youth baseball equipment and know the difference between an automatic baseball pitching machine used by children and adults. Pl. Br. 20-21.

Indeed, the Government's arguments underscore this problem. The Government argues that an examinee would know the pitching machine is "intended for children's play (*i.e.*, as a 'toy')," based on the fact that "{t}he machine releases 'time-delayed balls,' is made of 'bright colored plastic,' signals the ball release with an 'audible sound,' includes 'hollow' plastic bat and balls, and can be converted 'into a miniature T-ball set' for beginners as young as three years old." Def. Br. 15. For starters, CBP *did not* articulate this rationale in the operative determination at issue (A.R. 76–77), and the Court *must* therefore reject this *post hoc* rationalization. *See, e.g.*, *Regents*, 591 U.S. at 23–24.

Setting aside the Government's *post hoc* rationale, from these descriptors alone it is understandable and reasonable that an applicant who has no familiarity with automatic baseball pitching machines or

17

reduced size models of the same would identify this merchandise as sports equipment instead of a toy or reduced-size model. For example, a machine's ability to hurl objects at varying (and sometimes high) velocities is a trait not typically associated with a "toy" that is safe for use by children.

Even if the applicant had some familiarity with automatic baseball pitching machines, the Government's argument overlooks that such machines intended for adults may also release time-delayed balls and include audible sounds. The Government's claim also ignores that convertible T-ball sets also exist for adults. Indeed, the fact that the machine described in Question 44 "can be converted 'into a miniature T-ball set'" indicates that the article is not inherently intended for children's play, but rather a full-scale model that can accommodate individuals of various ages. For CBP to expect otherwise is unreasonable and unsupported by substantial evidence.

The Government emphasizes that because the machine is "designed for ages '3 years and older,'" the machine is "suited for children's play, but not . . . 'general physical exercise.'" Def. Br. 17. This argument is a *non sequitur* for several reasons. First, the Government misquotes the

question: the article is not "designed" for children aged 3 years and older, but rather is "*recommended* for children aged 3 years and older." A.R. 76 (emphasis added).

Second, the fact that an article is recommended for certain children (or can be used by children) does not mean that the article must be a toy, particularly when it possesses traits typically associated with sports equipment. CBP's explanation seemingly ignores the existence of children's sports equipment. The Question's fact pattern recognizes that this merchandise can be used for T-ball, which is a sport for children. Def. Br. 16; A.R. 76. Examples of merchandise classifiable under HTSUS 9506 as sports equipment affirm that children's sports equipment can qualify as sports equipment under that Heading. For example, HTSUS Heading 9506 classifies "wading pools" as sports equipment.[5] A wading pool is a reduced-size pool that is designed to be safer than a full-sized pool and meant for children. As with the automatic baseball pitching machine in this Question, the age of the wading pool's recommended user has no bearing on the merchandise's classification as sports equipment.

---

[5] *See* Pl. Br., Exhibit 1.

The Explanatory Notes to Heading 9506 drive home the point that, contrary to the Government's claims, children's sports equipment can qualify as sports equipment under Heading 9506.  In particular, the Explanatory Notes to Heading 9506 identify "Equipment of a kind used in children's playgrounds" as an example of sports equipment under Heading 9506.  *See* Explanatory Notes to Heading 9506, Subsection B(12);[6] *see also Lemans Corp. v. United States*, 660 F.3d 1311, 1321–22 (Fed. Cir. 2011) (discussing the Explanatory Notes to Heading 9506, including the reference to "children's playground equipment").  Nowhere does Heading 9506 contemplate that such children's sports equipment should be treated as a "toy" classifiable under a different heading.  In short, CBP's distinction between merchandise that is intended for children's play and merchandise that is intended to be used as sports equipment is plainly arbitrary and unsupported by substantial evidence.

Relatedly, it does not follow from the age designation of a merchandise that the merchandise is necessarily a reduced-size model.  *See* Pl. Br. 20 ("The mere fact that an article is used by children or

---

[6] For convenience, Plaintiff has provided a copy of the 2020 version of the Explanatory Notes to Heading 9506 in **Exhibit A**.  Plaintiff has provided the 2020 version of the Explanatory Notes because it corresponds to the 2020 Basic Edition of the HTSUS, which the CBLE identified as appropriate reference material.  A.R. 82.

recommended for young children does not indicate that the article is necessarily reduced in scale."). Just as a standard-sized baseball can be used by individuals "aged 3 years and older" and qualifies as sports equipment, *see* Explanatory Notes to Heading 9506, Section B(6) (**Exhibit A**), it is illogical to assume that equipment used by children must be reduced-size models.

Third, the Government's explanation notably relies on various sources that a customs broker applicant would not have access to during the CBLE. In particular, the Government's explanations rely on citations to case law, the dictionary, and prior Customs rulings, *see* Def. Br. 15-16, all of which an applicant cannot access during the exam, *see* A.R. 82 (listing the references an applicant may utilize during the exam). The Government's reliance on these sources to support CBP's conclusion further indicates that the Question unreasonably calls for knowledge that a CBLE examinee would have no reasonable basis to possess.

Finally, the Government fails to fully address the arguments raised in Plaintiff's Opening Brief. In particular, the Government does not address Plaintiff's argument that CBP provided only conclusory statements, rather than the "reasoned explanation" needed for the Court

to sustain CBP's decision. *See* Pl. Br. 21; *see also In re Nuvasive, Inc.*, 842 F.3d 1376, 1383 (Fed. Cir. 2016). As Plaintiff has explained, "{t}he arbitrary and capricious test requires that {CBP} engage in reasoned decision-making in grading the {CBLE}," *Harak*, 30 Ct. Int'l Trade at 912 (cleaned up); *accord O'Quinn*, 100 F. Supp. 2d at 1138, which includes "articulat{ing} a satisfactory explanation for its action including a rational connection between the facts found and the choice made," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up). *See* Pl. Br. 9. As Plaintiff has demonstrated (and the Government has effectively waived in its failure to rebut), CBP did *not* provide Plaintiff with a satisfactory explanation for its decision with respect to Question 44, but rather has provided mere conclusory statements to convey its decision. *See* Pl. Br. 21; *see also Calgon Carbon Corp. v. United States*, 145 F. Supp. 3d 1312, 1321 (Ct. Int'l Trade 2016) (holding that the Government "waived" its defense of a contested issue because it "chose not to address the merits of {a party}'s arguments" in its response brief). CBP's decision to deny Plaintiff credit for this Question is therefore arbitrary and not in accordance with law.

**<u>CONCLUSION</u>**

Neither the law nor substantial evidence supports CBP's decisions to deny Plaintiff credit on her answers to Questions 16, 20, 34, and 44 of the CBLE. The Court should therefore vacate CBP's decisions and remand this matter so that CBP may take further action consistent with the Court's order and opinion in this matter.

<div style="margin-left:40%">

Respectfully submitted,

 /s/ Devin S. Sikes
Devin S. Sikes
Yujin K. McNamara
Sarah P. Tinaphong
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, D.C. 20006
Tel:  202-887-4336
Fax:  202-887-4288
dsikes@akingump.com
ymcnamara@akingump.com
stinaphong@akingump.com

*Counsel for Plaintiff*

</div>

January 24, 2025

## CERTIFICATE OF COMPLIANCE

I, Devin S. Sikes, an attorney with Akin Gump Strauss Hauer & Feld LLP, certify that Plaintiff's Reply Brief in Support of the Rule 56.1 Motion for Judgment on the Agency Record contains 4,612 words (according to the word count feature of the Microsoft Word processing program) and therefore complies with the word count limitation set forth in Paragraph 2(B) (1)(a) of the Standard Chambers Procedures of the Court.


 /s/ Devin S. Sikes
Devin S. Sikes

January 24, 2025                    *Counsel for Plaintiff*

# EXHIBIT A

**95.06 - Articles and equipment for general physical exercise, gymnastics, athletics, other sports (including table- tennis) or outdoor games, not specified or included elsewhere in this Chapter; swimming pools and paddling pools.**

- Snow-skis and other snow-ski equipment :

9506.11 - - Skis

9506.12 - - Ski-fastenings (ski-bindings)

9506.19 - - Other

- Water-skis, surf-boards, sailboards and other water-sport equipment :

9506.21 - - Sailboards

9506.29 - - Other

- Golf clubs and other golf equipment :

9506.31 - - Clubs, complete

9506.32 - - Balls

9506.39 - - Other

9506.40 - Articles and equipment for table-tennis

- Tennis, badminton or similar rackets, whether or not strung :

9506.51 - - Lawn-tennis rackets, whether or not strung

9506.59 - - Other

- Balls, other than golf balls and table-tennis balls :

9506.61 - - Lawn-tennis balls

9506.62 - - Inflatable

9506.69 - - Other

9506.70 - Ice skates and roller skates, including skating boots with skates attached

- Other :

9506.91 - - Articles and equipment for general physical exercise, gymnastics or athletics

9506.99 - - Other
This heading covers :

(A) Articles and equipment for general physical exercise, gymnastics or athletics, e.g. :

Trapeze bars and rings; horizontal and parallel bars; balance beams, vaulting horses; pommel horses; spring boards; climbing ropes and ladders; wall bars; Indian clubs; dumb bells and bar bells; medicine balls; jump balls with one or more handles designed for physical exercises; rowing, cycling and other exercising apparatus; chest expanders; hand grips; starting blocks; hurdles; jumping stands and standards; vaulting poles; landing pit pads; javelins, discuses, throwing hammers and putting shots; punch balls (speed bags) and punch bags (punching bags); boxing or wrestling rings; assault course climbing walls; skipping ropes designed for sports activities and fitness classes.

(B) Requisites for other sports and outdoor games (other than toys presented in sets, or separately, of heading 95.03), e.g. :

(1) Snow-skis and other snow-ski equipment, (e.g., ski-fastenings (ski-bindings), ski brakes, ski poles).

(2) Water-skis, surf-boards, sailboards and other water-sport equipment, such as diving stages (platforms), chutes, divers' flippers and respiratory masks of a kind used without oxygen or compressed air bottles, and simple underwater breathing tubes (generally known as "snorkels") for swimmers or divers.

(3) Golf clubs and other golf equipment, such as golf balls, golf tees.

(4) Articles and equipment for table-tennis (ping-pong), such as tables (with or without legs), bats (paddles), balls and nets.

(5) Tennis, badminton or similar rackets (e.g., squash rackets), whether or not strung.

(6) Balls, other than golf balls and table-tennis balls, such as tennis balls, footballs, rugby balls and similar balls (including bladders and covers for such balls); water polo, basketball and similar valve type balls; cricket balls.

(7) Ice skates and roller skates, including skating boots with skates attached.

(8) Sticks and bats for hockey, cricket, lacrosse, etc.; chistera (jai alai scoops); pucks for ice hockey; curling stones.

(9) Nets for various games (tennis, badminton, volleyball, football, basketball, etc.).

(10) Fencing equipment : fencing foils, sabres and rapiers and their parts (e.g., blades, guards, hilts and buttons or stops), etc.

(11) Archery equipment, such as bows, arrows and targets.

(12) Equipment of a kind used in children's playgrounds (e.g., swings, slides, see-saws and giant strides).

(13) Protective equipment for sports or games, e.g., fencing masks and breast plates, elbow and knee pads, cricket pads, shin-guards, ice hockey pants with built-in guards and pads.

(14) Other articles and equipment, such as requisites for deck tennis, quoits or bowls; skate boards; racket presses; mallets for polo or croquet; boomerangs; ice axes; clay pigeons and clay pigeon projectors; bobsleighs (bobsleds), luges and similar non-motorised vehicles for sliding on snow or ice.
(C) Swimming pools and paddling pools.

The heading excludes :

(a) Strings for lawn tennis and other rackets (Chapter 39, heading 42.06 or Section XI).

(b) Sports bags and other containers of heading 42.02, 43.03 or 43.04.

(c) Sports gloves, mittens and mitts (generally heading 42.03).

(d) Enclosure nets, and net carrying-bags for footballs, tennis balls, etc. (generally heading 56.08).

(e) Sports clothing of textiles, of Chapter 61 or 62, whether or not incorporating incidentally protective components such as pads or padding in the elbow, knee or groin areas (e.g., fencing clothing or soccer goalkeeper jerseys).

(f) Sails for boats, sailboards or landcraft, of heading 63.06.

(g) Sports footwear (other than ice or roller skating boots with skates attached) of Chapter 64 and sports headgear of Chapter 65.

(h) Walking-sticks, whips, riding-crops and the like (heading 66.02), and parts thereof (heading 66.03).

(ij) Sports craft (such as marine jets, canoes and skiffs) and sports vehicles (other than bobsleighs (bobsleds), toboggans and the like), of Section XVII.

(k) Frogmen's and other goggles (heading 90.04).

(l) Electro-medical apparatus and other instruments and appliances of heading 90.18.

(m) Mechano-therapy appliances (heading 90.19).

(n) Breathing appliances of a kind used with oxygen or compressed air bottles (heading 90.20).

(o) Articles for sports purposes of Chapter 91.

(p) Bowling requisites of all kinds (including automatic bowling alley equipment) and other equipment for parlour, table or funfair games (heading 95.04).

Copyright 2009 CUSTOMS Info LLC. All Rights Reserved.