Slip Op. 25-37

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| SKEETER-JO STOUTE-FRANCOIS,<br>Plaintiff,<br>v.<br>JANET YELLEN, et al.,<br>Defendants. | Before: Lisa W. Wang, Judge<br><br>Court No. 24-00046 |

**OPINION AND ORDER**

[Denying Plaintiff's motion for judgment on the agency record, entering judgment for Defendants, and sustaining the agency decision on the merits.]

Dated: April 8, 2025

Sarah P. Tinaphong, Akin, Gump, Strauss, Hauer & Feld, LLP, of Washington, DC, argued for Plaintiff Skeeter-Jo Stoute-Francois. With her on the brief were Devin Scott Sikes and Yujin K. McNamara.

Marcella Powell, Senior Trial Counsel, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendants United States, Janet Yellin, Secretary of the Treasury of the United States Department of the Treasury. With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Nico Gurian, Trial Attorney, Aimee Lee, Assistant Director, Patricia McCarthy, Director, Justin R. Miller, Attorney-in-Charge, and Emma L. Tiner, Office of the Assistant Chief Counsel, United States Customs and Border Protection.

Wang, Judge: Plaintiff moves for judgment upon the agency record pursuant to CIT Rule 56.1, seeking review of the denial of her application for a customs broker's license, which was based on her failure to achieve a passing score of 75% on the requisite exam. Specifically, Plaintiff appeals four questions scored as incorrect.

For the reasons stated below, Plaintiff's motion is denied, and U.S. Customs and Border Protection's ("Customs") decision is sustained.

**BACKGROUND**

The Secretary of the U.S. Department of the Treasury may grant a customs broker's license to applicants who meet necessary qualifications. 19 U.S.C. § 1641(b)(2). One such requirement to obtain a customs broker's license is that an applicant must pass the customs broker license exam ("CBLE"). 19 C.F.R. § 111.11(a)(4). The Secretary delegated authority to issue customs broker licenses to the U.S. Department of Homeland Security's U.S. Customs and Border Protection ("Customs"). 19 C.F.R. § 111.13.

Plaintiff Skeeter-Jo Stoute-Francois ("Plaintiff") sat for the October 2021 CBLE. Administrative Record ("A.R.") 82–108, ECF. No. 15. In a letter dated November 16, 2021, Customs advised Plaintiff that she received a score of 67.5%, falling below the minimum passing score of 75%. A.R. 1–2. On December 28, 2021, Plaintiff sent a letter requesting an appeal of her score and challenged nine exam questions pursuant to 19 C.F.R. § 111.13(f). A.R. 3–15. On March 16, 2022, Customs gave Plaintiff the results of the appeal, and did not give credit for the nine challenged questions, but did grant credit for an incorrect question that was not challenged, bringing Plaintiff's score to 68.75%. A.R. 22–23. Plaintiff again appealed the nine challenged questions on May 14, 2022. A.R. 24–37. On January 5, 2024, Customs gave Plaintiff the results of her second appeal. A.R. 60–69. In the second appeal, Customs granted Plaintiff credit for three of the nine challenged questions, bringing Plaintiff's score to 72.5%.[1] A.R. 60–69, 72–80.

---

[1] In its decision for Plaintiff's second appeal, Customs erroneously concluded that Plaintiff's corrected score was 73.75%. A.R. 61. After suit was filed, Defendants

Plaintiff now appeals four questions, numbers 16, 20, 34, and 44 to the court, arguing that "neither substantial evidence nor the law supports [Custom's] decision to deny credit for her answers." Pl.'s Mot. for J. on the Agency R. ("Pl.'s Mot.") at 5, ECF No. 20.

**JURISDICTION AND STANDARD OF REVIEW**

The court has jurisdiction pursuant to 28 U.S.C. § 1581(g)(1), which states that "[t]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review … any decision of the Secretary of the Treasury to deny a customs broker's license." In reviewing an appeal of an applicant's results on the CBLE, the court gives great deference to the agency, as is "[c]onsistent with the broad powers vested in the Secretary for licensing customs brokers under 19 U.S.C. § 1641." Kenny v. Snow, 401 F.3d 1359, 1361 (Fed. Cir. 2005). The denial of a license will only be overturned if Customs' decision to deny an applicant credit was: (1) "not supported by substantial evidence"; and therefore (2) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Id.

The court, with limited judicial review, will not overturn an agency's decision to deny credit to a question where, "[t]he findings … as to the facts" are "supported by substantial evidence." Id. (citing 19 U.S.C. § 1641(e)(3)). When reviewing questions on the CBLE, "the substantial evidence standard does not require that Customs draft perfect questions." Chae v. Yellen, 579 F. Supp. 3d 1343, 1351 (CIT 2022) ("Chae I"),

---

requested and obtained a remand to issue a corrected score notice to Plaintiff due to a calculation error. ECF No. 12.

aff'd, No. 2022-2017, 2023 WL 3072385 (Fed. Cir. Apr. 25, 2023); see also Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) ("Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Instead, the court determines whether the question provided the applicant with sufficient information to select the correct answer. See Di Iorio v. United States, 14 CIT 746, 748–49 (1990).

This standard of review is one of reasonableness, and "the question is fair [if] it reasonably tests 'an applicant's knowledge of customs and related laws, regulations and procedures.'" Rudloff v. United States, 19 CIT 1245, 1249 (1995) (quoting 19 U.S.C. § 1641(b)(2)), aff'd, 108 F.3d 1392 (Fed. Cir. 1997). A question or term on the CBLE will not fail to meet the substantial evidence standard merely because it may be "susceptib[le] of different meanings." Depersia v. United States, 637 F. Supp. 2d 1244, 1252 (CIT 2009). Instead, a question or term susceptible of more than one interpretation fails to meet the substantial evidence standard only if:

> (1) the omission of relevant statutory or regulatory language [results] in the question falsely characterizing the applicable provision; (2) the inclusion or omission of language [results] in "the question's incorrect use of" a relevant term; or (3) the inclusion or omission of language [results] in the question "not containing sufficient information."

Chae I, 579 F. Supp. 3d. at 1353 (citations omitted).

If the court determines that Customs' decision to deny an applicant credit for a contested question met the substantial evidence standard, and the applicant still attained less than a 75% on the exam, Customs' decision to deny a customs broker's license will not be found to be "arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law." 5 U.S.C. § 706(2)(A); see also Chae I, 579 F. Supp. 3d at 1353 (quoting 19 C.F.R. § 111.11(a)(4)) ("Customs' regulations list four requirements for an individual to obtain a customs broker's license, one of which is that the applicant 'attain[ ] a passing (75 percent or higher) grade on' the CBLE.").

**DISCUSSION**

The court concludes that Customs' decision to deny Plaintiff credit for questions 16, 20, 34, and 44 on the October 2021 exam was supported by substantial evidence. As such, Plaintiff's score remains 72.5% and does not meet the minimum 75% or higher passing score requirement on the October 2021 exam. Accordingly, Customs' decision to deny Plaintiff a customs broker's license was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

**I. Customs' decision to deny Plaintiff credit for questions 16, 20, 34, and 44 was supported by substantial evidence.**

Before the court can determine whether Customs' decision to deny a customs broker's license was arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with the law, it must first determine whether Customs' decision to deny credit for a CBLE question was supported by substantial evidence. Kenny, 401 F.3d at 1361. Therefore, the court will consider each challenged question in turn.

**A. Question 16**

Plaintiff first appeals Customs' decision to deny her credit for Question 16 on the October 2021 exam. Pl.'s Mot. at 10. Question 16 states:

> In cases where imported cargo is unloaded from a commercial vessel at a port within the definition of 19 § CFR 24.24 Harbor maintenance fee, and admitted into a foreign trade zone, the applicant for admission who

becomes liable for the fee must pay all fees for which he is liable on a ___ basis.
A. Yearly
B. Daily
C. Monthly
D. Quarterly
E. Weekly

A.R. 73.

Plaintiff selected choice E, "[w]eekly," based on 19 C.F.R. § 24.24(d)(4), but Customs designated choice D, "[q]uarterly," as the correct answer pursuant to 19 C.F.R. § 24.24(e)(2)(iii). Id. Plaintiff does not argue that choice D is incorrect, but instead that "the question omitted sufficient information that would have permitted Plaintiff to make an informed choice." Pl.'s Mot. at 11. The issue, therefore, is whether Customs' decision to deny credit is supported by substantial evidence.

Plaintiff argues that Customs' decision to deny her credit for her answer, choice E, was not supported by substantial evidence because "without sufficient information on the cargo in question, the frequency of payments for the Harbor Maintenance Fee cannot be determined per 19 C.F.R. § 24.24.… [because] if the value of the imported cargo is less than $10,000, 19 C.F.R. § 24.24(d)(4) unequivocally instructs that '[q]uarterly payment is not required[.]'" Pl.'s Reply Brief in Supp. of Rule 56.1 Mot. for J. on the Agency R. ("Pl.'s Reply") at 3, ECF No. 26 (emphasis in original). Plaintiff continues that because the question "lacked significant information," it falls under one of the four circumstances where a question susceptible of more than one interpretation fails to meet the substantial evidence standard because "the inclusion or omission of language would result in the question not containing significant information for an

applicant to choose an answer." Pl.'s Reply at 4 (quoting Chae v. Yellen, No. 2022-2017, 2023 WL 3072385, at *2 (Fed. Cir. Apr. 25, 2023) ("Chae II")).

Defendants contend that choice D is supported by substantial evidence because "the wording of Question No. 16 tracks the regulatory language almost exactly and specifically references admission of cargo into 'Foreign Trade Zones.'" Defs.' Opp. To Pl.'s Mot. for J. on the Agency R. at 7, ECF No. 23. Defendants argue that Plaintiff's choice is one subject to a special rule or exemption, rather than the default rule, and "[b]ecause no facts present in the fact pattern suggested that the special rule or exemption was implicated, there was no basis for plaintiff to assume anything other than the default rule applied." Id. at 8–9.

The court has held that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent the agency's finding from being supported by substantial evidence." Depersia, 637 F. Supp. 2d at 1247. Further, "[i]t is incumbent upon the test-taker to synthesize the fact pattern provided while referencing the universe of information on which he or she is to base a decision." Id. at 1252 (emphasis added). A question will still meet the substantial evidence test even if it does not explicitly state that no possible exception or special rule will apply. See Dunn-Heiser v. United States, 374 F. Supp. 2d 1276, 1282–83 (CIT 2005) (holding that where an exam question stated that the article's "country of origin" is "properly marked," it needed not specify that the United States was not the country of origin because the correct answer did not require additional assumptions.).

Here, Question 16 verbatim asked for the rule laid out in 19 C.F.R. § 24.24. A.R. 73. 19 C.F.R. § 24.24(e)(2)(iii) states in relevant part:

> Collections, supplemental payments, and refunds – Import vessel movements – Foreign Trade Zones. In cases where imported cargo is unloaded from a commercial vessel at a port within the definition of this section and admitted into a foreign trade zone, the applicant for admission … must pay all fees for which he is liable on a quarterly basis in accordance with paragraph (f) of this section by submitting to [Customs] a Harbor maintenance Fee Quarterly Summary Report, CBP Form 349.

In making her decision, Plaintiff relied on 19 C.F.R. § 24.24(d)(4), a provision where applicable special rules apply in explicitly stated circumstances: "Special rules – De minimis for quarterly payments. Quarterly payment is not required if the total value of all shipments for which a fee was assessed for the quarter does not exceed $10,000." The question does not state or imply that any exceptions or "special rules" apply. A.R. 73. Instead, Plaintiff's choice was based on her assumption that the value of the merchandise was one that triggered a special rules provision. However, no information in the question indicated that a special rule or exception is applicable. Therefore, Plaintiff's assumptions to include additional possibilities beyond what "the fact pattern provided" cannot be reasonably found to be the best answer. Depersia, 637 F. Supp. 2d at 1252. As such, and because "examinees cannot be permitted to reach conclusions by taking a portion of the question and formulating their own factual scenarios," the court will not overturn Customs' decision to deny credit for Question 16. Di Iorio, 14 CIT at 751.

**B. Question 20**

Plaintiff next appeals Customs' decision to deny her credit for Question 20 on the October 2021 exam. Pl.'s Mot. at 13. Question 20 states:

What piece of information is NOT a requirement on a commercial invoice?

A. All rebates, drawbacks, and bounties, separately itemized, allowed upon the exportation of the merchandise.
B. An itemized list by name and amount of packing, cases, containers, and inland freight to the port of exportation, if included in the invoice price, and so identified.
C. The kind of currency, whether gold, silver, or paper.
D. The port of entry to which the merchandise is destined.
E. The name of a responsible employee of the exporter, who has knowledge, or who can readily obtain knowledge, of the transaction.

A.R. 74.

Plaintiff selected choice E, but Customs designated choice B as the correct answer pursuant to 19 C.F.R. § 141.86. Id. Defendants cite to 19 C.F.R. § 141.86(a), which sets forth eleven categories of information that are required on an invoice. Choices A, C, D, and E each correspond to four of the eleven categories under the provision, respectively: § 141.86(a)(9); § 141.86(a)(7); § 141.86(a)(1); and § 141.86(j). A.R. 74. Plaintiff does not argue that choice B is incorrect, but instead that the question is inconclusive "without additional context." Pl.'s Mot. at 15. The issue, therefore, is whether Customs' decision to deny credit is supported by substantial evidence.

Plaintiff first argues that the question "fails to account for the possibility that the required information would not appear on the commercial invoice, but instead on a separate document," as permitted in 19 C.F.R. § 141.86(i). Pl.'s Mot. at 14; 19 C.F.R. § 141.86(i) ("[a]ny information required on an invoice … may be set forth either on the invoice or on an attachment thereto."). In support of this argument, Plaintiff provides that all of the answers would be incorrect if they are listed on a hypothetical separate attachment rather than the commercial invoice. Pl.'s Mot. at 14–15.

Plaintiff's first argument fails for the same reason as its argument for Question 16, in that "examinees cannot be permitted to reach conclusions by taking a portion of the question and formulating their own factual scenarios." Di Iorio, 14 CIT at 751. Question 20 specifically asked, "what piece of information is NOT a requirement on a commercial invoice?" A.R. 74. (emphasis added). 19 C.F.R. § 141.86 is titled "Contents of invoices and general requirements" and begins in part (a) with "General information required on the invoice. Each invoice of imported merchandise must set forth the following information:" with eleven subsequent requirements listed. 19 C.F.R. § 141.86 (emphases added).

Nowhere in the question does it indicate that there is a possibility of an attachment, and Plaintiff again "formulat[es] [her] own factual scenarios." Di Iorio, 14 CIT at 751. Further, while 19 C.F.R. § 141.86(i) provides that "[a]ny information required on an invoice by any provision of this subpart may be set forth either on the invoice or on an attachment thereto," the requirements for both the invoice and the attachment to the invoice are the same. Plaintiff's formulated factual scenario of a hypothetical attachment to the commercial invoice still must include the requirements listed under 19 C.F.R. § 141.86(a), including Plaintiff's selected, incorrect choice, E.

Plaintiff further argues that the question "fails to account for the fact that a commercial invoice is not required with the entry of merchandise" pursuant to 19 C.F.R. § 142.6(a), and that "[i]f the commercial invoice itself is not required, the types of information provided in the answer choices … cannot qualify as 'requirement[s] on commercial invoice.'" Pl.'s Mot. at 15.

19 C.F.R. § 142.6(a) provides that the circumstances in which other documentation is acceptable instead of a commercial invoice are "listed in § 141.83(d)." However, "[i]t is incumbent upon the test-taker to synthesize the fact pattern provided while referencing the universe of information on which he or she is to base a decision." Depersia, 637 F. Supp. 2d at 1252 (emphasis added). It is not enough to show that hypothetical exceptions, which are not mentioned in the question, could exist to show that Customs' decision was not based on substantial evidence. Question 20 did not ask whether a commercial invoice is required in every instance, but specifically asked, "what piece of information is NOT a requirement on a commercial invoice?" A.R. 74. (emphasis added). The answer, therefore, is not changed by Plaintiff's hypothetical situation in which an invoice might not be required under other circumstances.

The standard of review is one of reasonableness, and "the question is fair [if] it reasonably tests 'an applicant's knowledge of customs and related laws, regulations and procedures.'" Rudloff, 19 CIT at 1249. As such, a question that included choices verbatim to the requisite regulatory components of a commercial invoice is reasonable, independent of any hypothetical scenarios. Customs' decision to deny credit for the incorrect answer will not be disturbed.

**C. Question 34**

Plaintiff further appeals Customs' decision to deny her credit for Question 34 on the October 2021 exam. Pl.'s Mot. at 15. Question 34 states:

> An article of base metal containing two or more base metals is classified by the metal that __________.
> A. Is referenced last in the {Harmonized Tariff Schedule of the United States (HTSUS)}
> B. Imparts the essential character of the article

C. Predominates by weight over each of the other metals
D. Has the highest value
E. Is essential to its actual use

A.R. 75.

Plaintiff selected choice B, based on Legal Note 7 of Section XV of General Rule of Interpretation ("GRI") 3, which provides that an article "shall be classified as if [it] consisted of the material or component which gives [the good its] essential character." Pl.'s Mot. at 17–18. Customs designated choice C as the correct answer, citing GRI 1, which provides that "articles of base metal (including articles of mixed materials treated as articles of base metal under the [GRIs]) containing two or more base metals are to be treated as articles of the base metal predominating by weight over each of the other metals." Id. at 16. Plaintiff does not argue that choice C is incorrect, but instead that "[s]ubstantial evidence does not support [Customs'] decision because the question lacks sufficient information regarding the 'article of base metal' at issue." Id. at 17. The issue, therefore, is whether Customs' decision to deny credit is supported by substantial evidence.

The court applies the GRIs for custom classification "in numerical order and only continues to a subsequent GRI 'if proper classification of the imported goods cannot be accomplished by reference to a preceding GRI.'" In Zone Brands, Inc. v. United States, 456 F. Supp. 3d 1309, 1315 (2020) (citation omitted). GRI 1 requires classification "to be determined according to the terms of the headings and any relative section or chapter notes …." GRI 1 (2021).

Here, the question asked: "An article of base metal containing two or more base metals is classified by the metal that __________." A.R. 75. (emphasis added) Section

XV's heading is titled "BASE METALS AND ARTICLES OF BASE METAL." Note 7 reads:

> Classification of composite articles: Except where the headings otherwise require, articles of base metal (including articles of mixed materials treated as articles of base metal under the General Rules of Interpretation) containing two or more base metals are to be treated as articles of the base metal predominating by weight over each of the other metals.

(emphases added).

Plaintiff contends that not enough information was given regarding the article at issue, and therefore, GRI 1, requiring that an article shall be "determined according to the terms of the headings and any relative Section or Chapter Notes" is not applicable here because the article could be a multitude of articles that contain more than one base metal. Pl.'s Mot. at 17–18. Plaintiff asserts that the multitude of potential articles, such as imitation jewelry, electrical conduit tubing, and more, required her to look beyond GRI 1 to GRI 3. Id.

However, "[e]xaminees cannot be permitted to reach conclusions by taking a portion of the question and formulating their own factual scenarios." Di Iorio, 14 CIT at 751. Plaintiff's choice B would require skipping the proper heading that directly addresses the question prompted. Zhong v. United States, Slip Op. 22-78, 2022 WL 2526576, at *4. (CIT July 7, 2022). Here, the question, without formulating additional factual scenarios, recited verbatim the corresponding heading, Section XV. Further, Note 7 recited verbatim the question with the corresponding correct choice, C. It is therefore considered to be reasonable, and Customs' decision to not award credit will stand.

**D. Question 44**

Plaintiff finally appeals Customs' decision to deny her credit for Question 44 on the October 2021 exam. Pl.'s Mot. at 18. Question 44 states:

> What is the CLASSIFICATION of an automatic baseball pitching machine that releases five time-delayed balls in succession? The pitching machine is constructed of bright colored plastic and operates using four D cell batteries, which power the launcher and audible sound that signals when the next ball is coming. The product also includes a hollow yellow plastic bat and five white hollow plastic balls. Additionally, beginners can convert the product into a miniature T-ball set. It is recommended for children aged 3 years and older.
> A. 9503.00.0071
> B. 9503.00.0073
> C. 9504.90.9080
> D. 9506.69.2040
> E. 9506.99.1500

A.R. 76.

Plaintiff selected choice D, but Customs designated choice B as the correct answer. Id. Here, Plaintiff argues that choice B is incorrect, and that "[w]hen viewed as a whole, the terms of Question 44 support Plaintiff's answer of choice D." Pl.'s Mot. at 21. The issue, therefore, is whether Customs' decision to deny credit for Plaintiff's choice is supported by substantial evidence.

Chapter 95 of the Harmonized Tariff Schedule (2021) is titled, "Toys Games and Sports Equipment; Parts and Accessories Thereof," of which all five possible answers to Question 44 are categorized under. The three headings at issue are: 9503, choices A and B; 9504, choice C; and 9506, choices D and E.

- Heading 9503 includes "[t]ricycles, scooters, pedal cars and similar wheeled toys; dolls' carriages; dolls, other toys; reduced-scale ('scale') models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof."

- Heading 9504 includes "[v]ideo game consoles and machines, articles for arcade, table or parlor games, including pinball machines, bagatelle, billiards and special tables for casino games; automatic bowling alley equipment; parts and accessories thereof."
- Heading 9506 includes "[a]rticles and equipment for general physical exercise, gymnastics, athletics, other sports (including table-tennis) or outdoor games not specified or included elsewhere in this chapter; swimming pools and wading pools; parts and accessories thereof."

Neither party argues that Heading 9504 is applicable. Instead, Plaintiff argues that Heading 9506 is correct, while Customs asserts that Heading 9503 is correct. Customs asserts that the correct heading is HTSUS Heading 9503 because "[t]he merchandise described [ ] is an automatic baseball pitching machine for use by children (recommended for children aged 3 years and older) … [and] is described by and meets the terms 'reduced scale ("scale") models and similar recreational models …." A.R. 77. Plaintiff contends that "there is no indication that the merchandise is anything but a full-sized, fully functioning automatic baseball pitching machine … [and] the Question therefore lacks sufficient information to suggest that it would qualify as a 'reduced-scale model' under HTSUS Heading 9503." Pl.'s Mot. at 20.

The court applies the GRIs for Customs classification "in numerical order and only continues to a subsequent GRI if proper classification of the imported goods cannot be accomplished by reference to a preceding GRI." In Zone Brands, 456 F. Supp. 3d at 1315 (citation omitted). GRI 1 (2021) requires classification "to be determined according to the terms of the headings and any relative section or chapter notes" and "[o]nce the correct heading is identified, the court determines which subheading correctly identifies the merchandise in question." Zhong, 2022 WL 2526576, at *4 (citation omitted).

Additionally, "[a]s the test specifies in the general instructions, the best answer must be chosen." Di Iorio, 14 CIT at 749 (emphasis in original).

The automatic baseball pitching machine described is mentioned as being constructed "of bright colored plastic" and "includes a hollow yellow plastic bat and five white hollow plastic balls." A.R. 76. These descriptions of the item reasonably provide evidence that the machine is a toy, under Heading 9503. It additionally can be converted from a "pitching machine" to a "miniature T-ball set" and "is recommended for children aged 3 years and older." Id. Statistical Note 1 of Chapter 95 provides that "classification is based on the youngest age for which the product is intended." Therefore, the machine being described as "recommended for children aged 3 years and older," would indicate that the toy is intended for children as young as age 3. A.R. 76. This would reasonably provide that the pitching machine is a "reduced-scale ('scale') model[ ] and similar recreational model[ ]," as described in Heading 9503.

While Plaintiff argues that Question 44 supports a choice of Heading 9506, covering "[a]rticles and equipment for … athletics, other sports … or outdoor games," the inquiry is not whether more than one answer choice could be supported by the question. Depersia, 637 F. Supp. 2d at 1247 ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent the agency's finding from being supported by substantial evidence."). The question is instead whether the question provided the applicant with sufficient information to select the correct answer. Di Iorio, 14 CIT at 748–49.

Moreover, the court's inquiry is not solely limited to whether the question itself is supported by substantial evidence, but instead examines whether the "[agency's] decision to deny credit is supported by substantial evidence…." Kenny, 401 F.3d at 1362. (emphasis added). The crux of Plaintiff's argument is that Heading 9506 is applicable because "[a]n 'automatic baseball pitching machine' fits within the plain meaning of 'equipment' for 'athletics' and/or sports other than 'general physical exercise or gymnastics.'" Pl.'s Mot. at 21–22 (emphases added).

Plaintiff's argument, however, is contradicted by her chosen answer, which was choice D. Although choice E, 9506.99.1500, covers "baseball articles and equipment, except balls, and parts and accessories thereof," Plaintiff instead chose choice D, 9506.69.2040, which covers "Baseballs." A.R. 76 (emphasis added). It is therefore reasonable and supported by substantial evidence that the agency denied credit when the question specifically asked, "What is the CLASSIFICATION of an automatic baseball pitching machine … ?" and Plaintiff selected the classification that corresponds to baseballs. A.R. 76.

**II. Customs' decision to deny Plaintiff a customs broker's license was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.**

Because the court determines that Customs' decision to deny Plaintiff credit for the four contested questions was supported by substantial evidence, Plaintiff's score remains 72.5%, falling short of the required 75% passing score. As such, Customs' decision to deny a customs broker's license was not "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law." 5 U.S.C. § 706(2)(A); see also Chae I, 579 F. Supp. 3d at 1353 ("Customs' regulations list four requirements for an

individual to obtain a customs broker's license, one of which is that the applicant 'attain[ ] a passing (75 percent or higher) grade on' the CBLE. 19 C.F.R. § 111.11(a)(1)–(4).").

**CONCLUSION**

For the foregoing reasons, the court concludes that Customs' decision to deny Plaintiff credit for questions 16, 20, 34, and 44 on the October 2021 exam was supported by substantial evidence, and that Customs' decision to deny plaintiff a customs broker's license was not "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law." 5 U.S.C. § 706(2)(A). Plaintiff's motion for judgment on the agency record is DENIED.

It is hereby:

**ORDERED** that U.S. Customs and Border Protection's denial of Plaintiff's application for a custom's broker's license is sustained; and it is further

**ORDERED** that judgment is entered for Defendants and the action is dismissed.

/s/ Lisa W. Wang
Lisa W. Wang, Judge

Dated: April 8, 2025
New York, New York